Robert W. Nickle, et al., Plaintiffs-Appellants, v. The Board of Appeals, Established Under the Zoning Ordinance of the City of Chicago, et al., Defendants-Appellees.

Gen. No. 48,755.

First District, Second Division.

April 23, 1963.

Cook & Lavery, of Chicago (John A. Cook and Harry D. Lavery, of counsel), for appellants.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin and Robert J. Collins, Assistant Corporation Counsel, of counsel), for certain defendants, and Maurice S. Levy, of Chicago, for Jerrold Ruskin, defendant-certain appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

Plaintiffs brought an action under the Administrative Review Act (Ill Rev Stats 1961, c 110, (§§ 264–279 (§§ 1–16)) to review the decision of the Board of Appeals of the City of Chicago which reversed the decision of the Zoning Administrator who had refused to allow a requested nonconforming use of the premises here under consideration. Pursuant to hearing in the Superior Court, an order was entered in favor of defendants, affirming the decision of the Board of Appeals, from which plaintiffs appeal.

The record made before the Board of Appeals discloses that the building in question, located at 1746–48 North Wells Street in Chicago, is a three-story store and apartment building, the first floor of which, at least from 1936 to the time of hearing, had been used, at successive intervals, for the sale of food and liquor, for the manufacture of furniture and upholstery covering, for the manufacture and distribution at wholesale of draperies, and for the refinishing and sale of antique furniture. Jerrold Ruskin, presently in possession of the premises and one of the defendants here, proposed a change of use of the first floor from its present use to that of a restaurant and hospitality bar to accommodate not more than eight patrons in connection with the operation of the restaurant, and to be open from approximately five in the afternoon until about midnight.

The building here under consideration was erected some time before 1923, the year in which a compre-

174

hensive zoning ordinance, known as the Chicago Zoning Ordinance (Revised Chicago Code of 1931, part VI, chs 33–35), became effective. At that time the ordinance classified the area in question as "commercial," which authorized a restaurant as a permitted use. Subsequently, in 1942, an amendatory ordinance classified the area as "business," which authorized a restaurant and the retail sale of alcoholic liquors as permitted uses. The Chicago Zoning Ordinance enacted in 1957 (Municipal Code of Chicago, c 194A), a comprehensive amendment of the Zoning Ordinance of 1923, classified the area as "residential." At that point the building became a nonconforming building and the use of the first floor became a nonconforming use under the ordinance definitions which state (art 3, § 3.2) that "a 'nonconforming building or structure' is any building or structure which . . . is designed or intended for a nonconforming use," and that "a 'nonconforming use' is any use of land, buildings, or structures which does not comply with all of the regulations of this comprehensive amendment . . . governing use for the zoning district in which such use is located." Section 6.2 of article 6 of the ordinance provides that "any nonconforming use, building or structure which existed lawfully at the time of the adoption of this comprehensive amendment and which remains nonconforming . . . may be continued . . . subject to the regulations which follow." Section 6.4–7 of article 6 provides that "the nonconforming use of a building or structure, all or substantially all of which is designed or intended for a use not permitted in the district in which it is located, may be changed to a use permitted in the same district as the nonconforming use which presently occupies the building or structure or to a use permitted in a more restrictive district . . . ."

Plaintiffs contend that the Board of Appeals misconstrued section 6.4–7. They say that under that section the Board could properly approve the change "only if (1) 'all or substantially all' of the building in question 'is designed or intended for a use not permitted' in the district in which located and (2) the entire building has been utilized for such prohibited use," and they argue that the record does not show either that all or substantially all of the building was designed or intended for a use not permitted in the district or that a nonconforming use was made of the entire building. However, the Zoning Ordinance recognizes in numerous places that dual or multiple uses of a building may be indicated or required by the peculiarities of its construction. For example, in a B6 district (where restaurants are a permitted use), dwelling units are permitted, but not below the second floor (art 8, § 8.3–6A(1)). Similarly, in a general residential district, the ordinance permits restaurants, cocktail lounges, drug stores, retail food shops, and other nonresidential uses in apartment hotels, provided that access is through the lobby with no outside advertising (art 7, § 7.3–6(2)). It also appears that under a recent amendment to the ordinance, dwelling units on the first floor in general retail districts are permitted as special uses under certain conditions (art 8, § 8.3–4A(1)).

In authorizing zoning regulation, the Cities and Villages Act provides in part (Ill Rev Stats 1961, c 24, § 11–13–1):

"In all ordinances passed under the authority of this Division 13, due allowance shall be made for existing conditions, the conservation of property values, the direction of building development to the best advantage of the entire municipality and the uses to which the property is devoted at the time of the enactment of such an

176

ordinance. The powers conferred by this Division 13 shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted . . . ."

Plaintiffs here are interested in extending residential uses in this area, but it was the intent of the City Council, as stated in the Zoning Ordinance (art 2 (14)), "to provide for the gradual elimination of those uses of land, buildings, and structures and of those buildings and structures which do not conform with the standards of the district in which they are respectively located . . . ." There is testimony in the record which shows that there is a liquor store at the end of the 1600 block on Wells Street, and two liquor stores and taverns in the 1800 block on Wells Street. Thus, the use of the 1746 Wells Street premises as a restaurant and bar would not be unique in the area; and it is an area that has been successively zoned as commercial, business, and presently residential.

 In passing on zoning questions, the courts of this State have in mind that it is the intent of State and local legislators that zoning changes be accomplished gradually, and that the right of an individual to the use of his property should not be unduly restricted. In Douglas v. Village of Melrose Park, 389 Ill 98, 58 NE2d 864 (1945), the plaintiff brought suit to restrain the defendant from enforcing a zoning ordinance in such a manner as to limit the use of her property to a residential use, although before the enactment of the ordinance in 1924 a building known as factory construction had been erected thereon. The building had been used as a printing shop until March 1937, at which time it was vacated, and plaintiff thereafter attempted to lease the premises either for printing or small-article manufacture. In construing the ordinance the court said (p 101):

"By the terms of the ordinance, property being used at the time the ordinance was adopted, for . . . a use not conforming to the classification made by the ordinance, shall not be subjected to a different classification than that in which it at that time exists. The right to such nonconforming use is a property right. (Western Theological Seminary v. City of Evanston, 325 Ill 511.) Any provision of a statute or ordinance which takes away that right in an unreasonable manner, or in a manner not grounded on public welfare, is invalid. (Tews v. Woolhiser, 352 Ill 212; Forbes v. Hubbard, 348 Ill 166; Western Theological Seminary v. City of Evanston, 325 Ill 511.) A zoning ordinance may be, in its general aspects, valid, and yet, as to a particular state of facts involving a particular parcel of real estate, be so clearly arbitrary and unreasonable as to result in confiscation, thereby justifying the interposition of a court of equity to restrain its enforcement. Harmon v. City of Peoria, 373 Ill 594; Johnson v. Village of Villa Park, 370 Ill 272; People ex rel. Kirby v. City of Rockford, 363 Ill 531."

Schneider v. Board of Appeals of Ottawa, 402 Ill 536, 542–543, 84 NE2d 428 (1949), and Village of Skokie v. Almendinger, 5 Ill App2d 522, 527, 126 NE2d 421 (1955), are to the same effect.

In the case at bar, there is no question of expanding or extending the use, merely of changing it from a manufacturing or commercial use to that of a restaurant with a small bar; and this is a use to which the store portion of the building had been put for many years. The Board of Appeals, after a full hearing of the testimony and arguments of the parties, found:

"[I]n this case the proposed use is to be located in an R7 General Residence District on the first

178

floor of an existing 3-story brick store and apartment building which was occupied at the time of the passage of the 1957 comprehensive amendment to the zoning ordinance and subsequent thereto with a business for the purpose of manufacturing and fabrication of upholstery of furniture, and the manufacture and wholesale distribution of draperies, and also included the upholstering of furniture for dealers, which included the process of sanding, spraying and lacquering of furniture which constituted a B6 use as itemized under Article 8.3–6(12) of the zoning ordinance; . . . the change of use to a restaurant and hospitality bar to accommodate not more than eight patrons for [sic] the previous use is proper in this instance under Section 6.4–7 of the zoning ordinance . . . ."

Accordingly, the Board sustained the appeal and reversed the decision of the Zoning Administrator.

■ ■ The findings of fact and conclusions of law made by the Board are adequately supported by the record. The scope of judicial review under the Administrative Review Act is limited to a consideration of the record made before the administrative agency, and the findings and conclusions thereof on questions of fact are to be considered as prima facie true and correct (Ill Rev Stats 1961, c 110, § 274 (§ 11 of the act)). In Brown v. Board of Zoning Appeals, 21 Ill App2d 273, 157 NE2d 685 (1959), the court said (p 279) that the granting or refusing of a variance by a city board of zoning appeals is subject to judicial review, but that the decision of the board will not be disturbed where there is competent evidence which tends to support its action. In Nechi v. Daley, 40 Ill App2d 326, 188 NE2d 243 (1963), we said:

"The law in Illinois is well settled that the scope of judicial review is limited to a consideration of

179

the record to determine if the findings and orders of the administrative agency are against the manifest weight of the evidence, and it has been consistently held that the courts are not authorized to reweigh the evidence or to make an independent determination of the facts. Parker v. Dep't of Registration, 5 Ill2d 288, 293–294, 125 NE2d 494 (1955); Logan v. Civil Serv. Comm'n, 3 Ill2d 81, 86–88, 119 NE2d 754 (1954); and Taylor v. Civil Serv. Comm'n, 33 Ill App2d 48, 52, 178 NE2d 200 (1961)."

For the reasons indicated, the order of the Superior Court affirming the action of the Board of Appeals is affirmed.

Order affirmed.

BRYANT, P. J. and BURKE, J., concur.