John P. Zito, d/b/a Mary Ann's Tavern, Plaintiff-Appellant, v. Illinois Liquor Control Commission, Defendant-Appellee.

Gen. No. 52,432.

First District, Fourth Division.

July 9, 1969.

Stewart D. Spitzer and Jesse H. Brown, of Chicago, for appellant.

William G. Clark, Attorney General of State of Illinois, of Chicago (John J. O'Toole and A. Zola Groves, Assistant Attorneys General, of counsel), for appellee.

MR. JUSTICE STAMOS delivered the opinion of the court.

Plaintiff, John P. Zito, doing business as Mary Ann's Tavern, filed a statutory action in the Circuit Court under the Administrative Review Act, Ill Rev Stats, c 110, §§ 264–279 (1967), to review the administrative order of the defendant, Illinois Liquor Control Commission, which revoked plaintiff's previously issued license. The court affirmed the order of the Commission and this appeal followed.

A citation to show cause why his license should not be suspended or revoked was served on plaintiff on November 4, 1966. It alleged the following violations of Revised Rule 3 of the Rules and Regulations of the Commission:

(1) That the licensee, or his agents, did violate the ordinance of the Village of Melrose Park in that they

served alcoholic spirits on the licensed premises after 6:00 a. m. on October 15, 1966;

(2) That the licensee, or his agents, did permit a shooting to occur on the licensed premises as a result of which one patron was charged with murder;

(3) That the licensee is of such reputation that he should show cause why the Commission should not suspend or revoke his retail state liquor license.

Plaintiff contends that there was no substantial evidence to support any of the charges contained in the Commission's citation to show cause and that the court erred in not striking from the answer certain documents not in evidence which were included in the certified record furnished by the Commission.

The record discloses that the following testimony was given at the hearing before the Commission:

ROBERT NARDELLA, called as a witness on behalf of the Illinois Liquor Commission testified as follows:

He is a detective in the Melrose Park Police Department and on October 15, 1966 he had the occasion to participate in an investigation at the plaintiff's tavern. At 6:32 a. m. he was off duty and at his home when he received a call from the police station that a shooting had occurred at plaintiff's tavern. Upon arrival at the tavern at 6:50 a. m. he and his partner were met by police officers DiSantis and Stellotto who turned over to them a .45 calibre automatic taken from Matias Montemayor who had been apprehended fleeing the scene and arrested for the fatal shooting of Mrs. Daphne Studt. Plaintiff had an all night license which required his tavern to be closed from 6 to 7 a. m.

JAMES V. SAMMAURO, called as a witness on behalf of the Illinois Liquor Commission testified as follows:

He is a part-time bartender at the tavern and was on duty October 15, 1966 and was present when the shooting took place, but did not see what occurred. The shooting occurred at about 5:50 a. m. and the witness called the police. He could not say at what time the police arrived, but testified it was quite a while after he called for them, although the police station is only three blocks from the tavern. He was paid for his services in cash by the tavern owner and works only on the weekends. In July of 1964 the witness was arrested for violation of probation. He further testified nothing was served after 6:00 a. m. and about 19 or 20 patrons were in the tavern at the time the shooting took place. He heard the shot and had no knowledge before the shooting that anyone in the tavern was in possession of a firearm. The plaintiff advised him to call the police and directed the patrons not to leave and they remained waiting for the police.

JAMES DIAFERIA, called as a witness on behalf of the Illinois Liquor Commission testified as follows:

He is a police sergeant with the Melrose Park Police Department and accompanied Detective Nardella to the tavern in response to a call that a shooting had occurred and they arrived at approximately 6:55 or 6:50 a. m. He was off duty and at his home when he responded to the call. The witness participated in the interview of five persons regarding the shooting.

JOHN P. ZITO, called as a witness on behalf of the Illinois Liquor Commission testified as follows:

He was the licensee of the tavern and was present when Mrs. Studt was shot and killed in the tavern. He had been arrested on February 2, 1963, March 9, 1963, December 17, 1961 and January 24, 1955.

106

JOHN DALLMAN, called as a witness on behalf of the Illinois Liquor Commission testified as follows:

He is a special agent with the Federal Bureau of Investigation and on November 17, 1966, he visited plaintiff's tavern and observed a liquor license issued by the Village of Melrose Park and recalled it had been issued to plaintiff John P. Zito.

ANTHONY F. IOSCO, called as a witness on behalf of the Illinois Liquor Commission testified as follows:

He is chief of police of the Village of Melrose Park and the police department records reflect that they received a call at 6:32 a. m. that a woman was shot at plaintiff's tavern. He did not arrive on duty until 9:30 a. m. The records of the department show that within a minute three calls were received at the station advising that a shooting had occurred at the tavern.

ALLIEO DISANTIS, called as a witness on behalf of the Illinois Liquor Commission testified as follows:

He is a police officer with the Melrose Park Department and on the morning of October 15, 1966 he was on duty and in a police car when he received a radio message that a shooting had occurred at plaintiff's tavern which was one block away. He received the call at 6:32 a. m. At the time he and his partner received the call they were engaged in checking the taverns regarding closing hours. When they arrived at the tavern they observed two men running from the tavern and took them into custody and one of the prisoners, Matias Montemayor, told the witness that he had just shot a woman in plaintiff's tavern a few minutes ago. After the prisoner was apprehended the witness brought him back to the plaintiff's tavern. The witness remained until po-

lice detectives arrived and removed the tavern patrons to the police station.

CHESTER CARSON, called as a witness on behalf of the Illinois Liquor Commission testified as follows:

He is the president of the Village of Melrose Park and the records of the village show that the plaintiff had been issued a local liquor license and was in possession of it on October 15, 1966.

ALFRED E. PRIGNANO, called as a witness on behalf of plaintiff, testified as follows:

He is a funeral director and has been in business in Melrose Park for twenty years. He had known plaintiff for 30 years and he knows the general reputation of plaintiff in the community in which he resides for honesty, integrity and for being a peaceful and law-abiding citizen and that plaintiff's reputation is good. To the best of the witness's knowledge he did not know if plaintiff had ever been arrested.

PATSY B. MOGNOLO, called as a witness on behalf of plaintiff, testified as follows:

He has lived in Melrose Park for 38 years and has known plaintiff all that time. The witness is a building contractor and knows plaintiff's reputation in the community for honesty, integrity and for being a peaceful and law-abiding citizen and it is very good. He sees plaintiff practically every day and the witness knows that plaintiff had been previously arrested but never convicted.

JOHN P. ZITO, testified on his own behalf, as follows:

He was the licensee of Mary Ann's Tavern and on October 15, 1966 there was a shooting in the tavern, but the

witness had no knowledge that the patron, Matias Montemayor, was carrying a gun or any weapon nor did any of plaintiff's employees have such knowledge.

Neither the witness nor any of his employees had any knowledge of the reason for the shooting. He testified that at the time of the shooting he was in the men's room repairing a clogged sink when he heard the shot which sounded like a firecracker. He ran out of the restroom into the tavern and observed the deceased on the floor. The witness directed that the doors be locked and that no one leave the premises. He then told the bartender to call the police and they arrived in 15 or 20 minutes. Everyone was interrogated by the police. Plaintiff placed letters of commendation into evidence received during his service in the U. S. Army.

The Commission revoked plaintiff's license. On administrative review the Circuit Court affirmed and plaintiff appealed.

OPINION

■ ■ Under the Administrative Review Act, the findings and conclusion of the Commission on questions of fact are held to be prima facie true and correct. Ill Rev Stats, c 110, § 274 (1967). The reviewing court is limited to a consideration of the record to determine if the findings and orders of the Commission are against the manifest weight of the evidence. Nechi v. Daley, 40 Ill App2d 326, 188 NE2d 243 (1963). The findings must be based on substantial evidence. Bruce v. Department of Registration and Education, 26 Ill2d 612, 187 NE2d 711 (1963).

The Administrative Review Act, Ill Rev Stats, c 110, § 272(b) provides, inter alia: ". . . an answer shall consist of the original or a certified copy of the entire record of proceedings under review, including such evidence as may have been heard. . . ." Section 274 of the Administrative Review Act provides, inter alia: "No new or additional evidence in support of or in opposition

to any finding, order, determination or decision of the administrative agency shall be heard by the court."

Plaintiff complains that the trial court abused its discretion in refusing to strike certain portions of the answer filed in response to the complaint for administrative review. The record shows that certain prejudicial documents were neither marked or offered in evidence at the Commission hearings, nor filed therein nor any evidence heard thereon, but were certified in the record as part of the answer by the Illinois Liquor Commission. Neither in this court nor in the trial court did the Commission contend that these documents are properly in the record, but it argues that the court properly denied plaintiff's motion to strike these documents because the motion to strike was not filed within twenty-one days after the answer was due and was thus too late under Supreme Court Rule 182(c), Ill Rev Stats, c 110A, § 182 (c) (1967):

> "A motion attacking a pleading other than the complaint must be filed within 21 days after the last day allowed for the filing of the pleading attacked."

■ The documents complained of by plaintiff were letters, reports and memoranda furnished to the Illinois Liquor Commission and its chairman before any hearings in this matter commenced. The documents complained of were: an FBI report and memoranda which included comments about and arrest records of plaintiff; an arrest warrant and complaint for Matias Montemayor; correspondence from the United States District Attorney regarding plaintiff; and correspondence from the Melrose Park Liquor Commissioner to the Cook County Sheriff's Police Department and to the Illinois Liquor Commission. Since the contents of the answer must be in conformity with section 272 of the Administrative Review Act and since they were not properly a part of the record, the trial judge could not consider them and neither

110

can we. See Nickle v. Board of Appeals, 41 Ill App2d 173, 179, 190 NE2d 136 (1963). We cannot find that plaintiff's failure to move to strike an answer in an administrative review proceeding within the time limit of the Supreme Court Rule should result in the approval of a record which is contrary to the provisions of a specific statute and contrary to the certification of the Commission's secretary.

Therefore we shall consider only the record of proceedings without recourse to the documents made part of the answer in the Circuit Court.

Plaintiff further contends that the decision of the Commission was unsupported by substantial competent evidence. McNary v. County Board of School Trustees, 64 Ill App2d 165, 211 NE2d 141 (1965).

In regard to the first charge in the citation that plaintiff, or his agents, served alcoholic spirits on the licensed premises after 6:00 a. m. in violation of the Village of Melrose Park ordinance the Commission addresses itself to this point in its brief and argument with the following:

> "Violation of an ordinance of a village is ground for revocation of a liquor license. The evidence leaves no doubt that plaintiff's place of business was open for business during hours it should have been closed."

and concludes:

> "It is respectfully submitted that the violation of keeping the tavern open between 6:00 and 7:00 a. m. has been established and the trial court should be affirmed."

■ We agree that a violation of an ordinance may be a ground for revocation of a liquor license, and that there is evidence to establish that plaintiff was open after 6:00 a. m., in violation of the ordinance governing dram shops. The Commission however, elected to proceed

with the charge of serving alcoholic spirits after closing hours.

The Commission in support of its position cites the following cases: Richards v. City of Bayonne, 61 NJL 496, 39 A 708, (1898); Lynch v. People, 16 Mich 472 (1868); and 23A Words and Phrases.

In Richards, supra, it was held that the proprietor of a licensed saloon was properly convicted of a violation of an ordinance that forbade "keeping open" on Sunday. In Lynch, supra, the court held that to "keep open" implied a readiness to carry on the usual business therein and Words and Phrases, supra, expressed varying interpretations of "keeping open for business." The Commission's argument under this point was devoted substantially, if not almost entirely, to contending that the evidence established plaintiff's violation of the village ordinance pertaining to closing, not the serving of alcoholic liquor spirits after prohibited hours as charged in the citation.

The Commission contends that the plaintiff's tavern was open after closing hours and that 19 or 20 people were on the premises. It argues that this raises an inference that alcoholic spirits were served in violation of the ordinance. We are therefore asked to infer that the persons on the premises were served and further infer that if they were served, they were served alcoholic spirits as charged in the citation and further infer that the service occurred after 6:00 a. m.

■ The foregoing is not tantamount to establishing the serving of alcoholic spirits by substantial evidence. The bartender testified as a witness for the Commission that no one was served after 6:00 a. m. and that no one was permitted to leave the premises. Although several police officers testified that they were summoned to the premises, the record is silent as to whether they observed any person drinking, in the possession of or being served alcoholic spirits. We cannot conclude that

112

under all these circumstances there was any substantial evidence of selling liquor during the prohibited hours.

The second charge in the citation is that plaintiff permitted a shooting to occur on the licensed premises. The record in regard to this portion of the citation is lacking in any evidence that would establish that plaintiff, or his agents, permitted a shooting. The Commission does not argue the point in its brief.

The third and final portion of the citation alleges that the plaintiff "is of such reputation that he should show cause why this Commission should not suspend or revoke his retail state liquor license."

The only evidence in the record on behalf of the Commission concerning the reputation of plaintiff was developed in the examination of the plaintiff by the Commission. The plaintiff testified he had been arrested on four occasions. There was no further pursuit of this area of interrogation to determine the charges, dispositions or convictions, if any, regarding these arrests. Plaintiff also testified on cross-examination that he had a Federal Wagering Stamp in 1960. Plaintiff introduced letters of commendation received from his Army Commanding Officers during his military service, an honorable discharge from the Army in 1945, and an honorable discharge from the Army Reserve as a First Sergeant in 1952. Two witnesses testified to plaintiff's good reputation in the community. We cannot conclude that the Commission's evidence as to reputation warranted a revocation of plaintiff's license.

Accordingly we find that the order of the Illinois Liquor Commission was unsupported by substantial evidence and is, therefore, erroneous, and that the judgment of the Circuit Court was also erroneous. The judgment of the Circuit Court is therefore reversed.

Judgment reversed.

DRUCKER, P. J. and McNAMARA, J., concur.