EILEEN I. NAPIER, Plaintiff-Appellee, *v.* FIREMEN'S ASSOCIATION OF CHICAGO, a/k/a CHICAGO FIRE FIGHTERS UNION LOCAL NO. 2, *et al.*, Defendants-Appellants.

(No. 55767; ▮▮▮▮▮▮▮▮▮▮

First District—January 22, 1973.

George F. Archer, of Chicago, (Duffy & Jordan, of counsel,) for appellants Chicago Fire Fighters Local No. 2.

Vincent J. Biskupic, of Oak Brook, for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Eileen I. Napier (plaintiff) brought an action for declaratory judgment against Chicago Fire Fighters Union, Local No. 2, affiliated with International Association of Fire Fighters, AFL-CIO (Union) and Bankers Life and Casualty Company (Insurer.) She sought to establish her right to a death benefit in connection with the death of her late husband, George W. Napier. Both plaintiff and the Union made motions for summary judgment. The trial judge denied the Union's motion and entered judgment in favor of plaintiff. The Union and the Insurer appeal.

The Union contends that its by-laws are constitutional; both Federal law and the law of Illinois forbid interference by courts with the internal affairs of any voluntary organization; the by-laws of the Union were binding on deceased and on plaintiff; and, finally, the decision appealed from "undermines the Union's ability to maintain loyal membership." In plaintiff's brief, she contends that the trial court had power to void the posthumous expulsion of her husband; and a member of a union may not be posthumously expelled. Plaintiff further states the issue to be, "The purported expulsion was invalid because of the absence of due process."

There is no disputed issue of fact. On November 2, 1940, the deceased, George W. Napier, joined the Union and became a member in good standing. It is clear that he paid his union dues regularly until his death. In accordance with its by-laws, the Union contracted with the Insurer for group insurance covering its members; including a death benefit or donation of $1000. The Union paid the necessary premiums upon this policy. Plaintiff was designated as beneficiary of the deceased.

Some time thereafter, while maintaining his membership in the Union, the deceased also became a member of the Chicago Fire Officers Association. Deceased was then an officer and at the time of his death he was a Chief Division Fire Marshall in the City of Chicago Fire Department. Deceased paid his dues in full to this Officers Association until his death.

On or about October 19, 1964, the Executive Board of the Union determined that this Association was an organization which was detrimental to the principles, as well as to the operation of the Union. This determination was announced at several regular monthly membership meetings of the Union, as appears from the minutes of such meetings. The constitution and by-laws of the Union provide that they may be amended by referendum vote. Amendments are to be presented by written petition signed by at least 15 members of the Union. The amend-

ment must then be approved by the local Executive Board and the referendum vote follows. It is undisputed that the Union by-laws were amended by secret ballot referendum effective August 7, 1965. Article XII of the constitution and by-laws refers to death donations. The amendment provides:

"No death Donation shall be paid to any person in the event a member shall be found to be in violation of Section 7 of Article VIII of the By-Laws."

At the same time Article VIII Section 7 was amended as follows:

"Any member found by the Executive Board to be in violation of this Section shall immediately and automatically forfeit the right to any benefits from this Union, either for himself or for any other person. Such forfeiture shall also apply in the case of such violation arising at the time of the death of a member, provided, however, that in such latter case, the Executive Board shall allow the legal representatives of the deceased member the opportunity to be heard."

In January of 1966, a letter was written by the President of the Union, approved by its Executive Board, and sent to every member by mail, including plaintiff's husband. This letter specified the determination of the Executive Board on October 19, 1964 that "* * * the Fire Officers Association of Chicago is an organization which is detrimental to the principles, operation and business of this Union." Attention of the membership was also directed to the above quoted amendment to Article VIII, Section 7, which was reproduced in full. There is no denial in the record by plaintiff of receipt of this communication by the deceased.

After the death of plaintiff's husband on August 1, 1968, plaintiff made a demand for payment of the death benefit. However, notice of the membership of deceased in the Chicago Fire Officers Association came to the attention of the Union for the first time from newspaper obituary notices. A hearing was held by the Union Executive Board on November 14, 1968. Plaintiff and her attorney attended this meeting. Plaintiff and her attorney then and there admitted that the deceased had been a member of the Fire Officers Association. The Executive Board found that the deceased was not a member of the Union in good standing and that plaintiff was accordingly not entitled to receive the death donation.

In our opinion, it is unnecessary for us to decide or even to consider the various constitutional and other legal matters extensively briefed and argued by both sides of the controversy. We will merely state parenthetically that this record presents no attempted interference with the internal affairs of a voluntary organization. It is simply an adjudication by the courts of the rights of plaintiff, who was never a mem-

ber of the Union. We prefer to rest our decision of this cause upon simple and readily apparent grounds.

■■ It is a basic principle of labor law that the constitution and by-laws of a union legally constitute a binding contract between the members themselves and between the members and the union. *O'Brien v. Matual*, 41 Ill.App.2d 173, 197, 144 N.E.2d 446.

■■ We find that plaintiff, as surviving beneficiary of a deceased member, is entitled to the death donation under the clear and unambiguous language of Article XII Section 1 which provides that the death donation shall not be "*  *  *  paid to any person in the event a member shall be found to be in violation of Section 7 of Article VIII *  *  *." The clear purport of this by-law as amended is that the death benefit shall not be paid in event any member has been found to be in violation of the by-laws. In the case at bar, the union membership of deceased terminated by his death on August 1, 1968. Prior to that time, he was never "found to be in violation" of any provision of the Union by-laws.

Nor does the amendment to Section 7 of Article VIII militate against this. As shown, it provides that the right to benefits shall be automatically forfeited when the offending member is "*  *  *  found by the Executive Board to be in violation of this Section *  *  *." In this case, the member was not found by the Executive Board to be guilty of any violation. Nor can this situation be treated as "*  *  *  arising at the time of the death of a member *  *  *." This violation by the deceased occurred when the by-laws were amended on August 7, 1965 and it terminated at the precise moment of the death of the member, at which time he necessarily ceased to be a member of both organizations.

■■ The very status of a union member presupposes the existence of a living person. Immediately upon death the status is terminated for all purposes. This is analogous to marital status which terminates immediately and irrevocably upon death of one of the parties (*Bushnell v. Cooper*, 289 Ill. 260, 264, 124 N.E. 521); or to an insurance claim for disability benefits which ceases upon death (*Ferguson v. Penn. Mutual Life Insurance Co.*, 305 Ill.App. 537, 542, 27 N.E.2d 548); or to a life estate which terminates immediately upon death of the owner. The death of George W. Napier terminated his status as a member of the Union completely and irrevocably and for all purposes; beyond the possibility of subsequent modification of that status by any legal or human agency. At the precise moment of his death, his beneficiary became entitled to the death donation by virtue of her then newly acquired status as the widow of a member in good standing.

Two further thoughts must be expressed. Counsel for plaintiff states

that he has never encountered a case in which a union membership was terminated posthumously. Our research discloses no such case. In our opinion, it was neither possible nor permissible for the Executive Board of the Union to terminate the membership of the deceased on November 14, 1968. His status as a Union member had previously been terminated for all time and for all purposes by his death.

The Union has taken the position that payment of this benefit to plaintiff will serve to undermine its indispensable power effectively to combat dual unionism. The feeling against dual unionism arose historically and logically from efforts of employers to hamper the growth of trade unionism by using company dominated rival unions as sources of information concerning union matters. Unions traditionally have power to combat dual unionism and neither the payment of this death benefit nor any word in this opinion is to be construed in any manner as an attempt to hamper this Union, or any other labor organization, in its legitimate efforts to obtain the undivided loyalty of its membership. However, we see no connection between the right of plaintiff to the death benefit and this basic and inalienable Union right.

We find no error in the judgment appealed from.

Judgment affirmed.

BURKE, P. J., and LEIGHTON, J., concur.