(No. 34758.— )

THE CITY OF LOVES PARK *et al.*, Appellees, *vs.* WOODWARD
GOVERNOR COMPANY, Appellant.

*Opinion filed September 18, 1958—Rehearing denied Nov. 14, 1958.*

Davis, J., took no part.

Charles S. Thomas, of Rockford, for appellant.

Harold H. Pahlas, of Rockford, for appellees.

Mr. Justice House delivered the opinion of the court:

The plaintiffs, the city of Loves Park and its zoning enforcement officer, obtained a decree for a permanent injunction against the defendant, Woodward Governor Company, restraining it from using a lot zoned "B" residential for the parking of automobiles. The circuit court of Winnebago County certified that the validity of a city ordinance is involved and that the public interest requires a direct appeal to this court.

The lot in question was purchased by the defendant in June, 1955. The house and garage were removed and the land leveled and blacktopped. It has been used since as a private day-time parking lot by visiting salesmen, executives and customers of the company. Approximately 14 cars can be parked thereon, but the average number is from 3 to 12. The decree appealed from permanently enjoins a continuation of its present use. The defendant maintains that the zoning ordinance, insofar as it applies to the lot, is unreasonable and discriminatory and violates the due-process

clauses of the State and Federal constitutions. It further asserts that the decree is contrary to the manifest weight of the evidence.

A zoning ordinance takes from an owner the traditional right to use his property as he sees fit. Its justification is founded upon exercise of the police power to secure the common welfare. A zoning classification must therefore bear a real and substantial relation to the public health, safety, comfort, morals or welfare. (*La Salle Nat. Bank* v. *County of Cook*, 12 Ill.2d 40; *Gordon* v. *City of Wheaton*, 12 Ill.2d 284.) In order to ascertain whether there is a substantial relationship between a classification and the public welfare, recourse must be had to the facts in each particular case. *Hannifin Corp.* v. *City of Berwyn*, 1 Ill.2d 28; *Myers* v. *City of Elmhurst*, 12 Ill.2d 537.

The record, including the stipulation of the parties, discloses that the defendant owns a rectangular tract of 25 acres upon which its manufacturing business has been operated since 1940. About one third of the tract is covered by the company's buildings. A lawn and circular driveway is maintained just north of the company's offices and the rear of the subject lot abuts on such lawn. The company maintains a seven to eight-hundred-car parking area on the south side of its plant tract for use of its factory employees.

The 25-acre tract was originally classified as industrial by the county, as it was by the plaintiff city after the city's organization in 1947. In 1948 such tract was disconnected from the city and is no longer in the city limits. The areas both to the north and south of the 25-acre tract are within the city limits. The lot in question is zoned as "B" residential. Under that classification apartment houses with 12 dwelling units per building are permitted, and storage space for one car per family unit can be maintained.

The lot in question is in the approximate center of a long block of lots, the rear of which abuts on the north line of defendant's property. Access to the lots is from

Sydney Avenue which borders them on the north. Single family residences occupy both sides of Sydney. The area north and east of this block is zoned and used for industrial purposes. The rear of two short blocks abuts on the company's tract to the south and front on Beacon Street. The east block thereof is all zoned industrial except three lots which are zoned "B" residential but used for industrial purposes. The block south of that consists of 12 lots, 3 zoned "B" residential, but all are occupied by industrial buildings. All of the remainder from thence south to the North Western railroad is also zoned industrial. The west block immediately south of defendant's property is also zoned "B" residential and is occupied by residences. From thence south all of the lots are also zoned "B" residential, but several parking lots similar to the one here complained of are maintained thereon by industries with plants across the street to the east.

This lot and the properties near it, both north and south of defendant's industrial plant, are largely devoted to residential use, but it must be recognized that they are bordered on two sides by industrial areas. Several parking lots are maintained just to the south of the company tract and they bear the same classification as the subject lot. Plaintiffs argue that there is a difference in the property between the north and south neighborhood abutting on the 25 acres. According to the evidence the houses are about the same size and type, are used for single-family occupancy and bear the same zoning classification. The only difference appears to be that the value of the houses south of the company's tract is slightly lower. The unexplained slight difference in value under these circumstances cannot support a policy of enforcing the zoning classification to the north and ignoring violations to the south.

The character of the neighborhood and the zoning classification and use of nearby properties are factors pertinent to an inquiry as to the extent of diminution in value of

nearby properties if the zoning restriction is declared void as to the subject lot. The evidence pertaining to depreciation of property in the neighborhood is vague and unsatisfactory. Only one of plaintiffs' six witnesses, a real-estate broker, testified on the subject. He expressed the opinion that the present use of the lot would depreciate the surrounding property, and that loan appraisals would be lower, but offered no opinion as to the amount. It developed that he had never examined the properties nor had he sold any property in the area for four or five years. Three realtors testified on behalf of defendant and each was of the opinion that property values would not be depreciated. The lot is blacktopped, well kept and surrounded on all except the company's side by a neatly trimmed hedge. One of plaintiffs' witnesses testified that the defendant kept its grounds better than anybody in the city, and that "the lot looks better than the house that was there." Based on this record it is unrealistic to say that the value of surrounding property will be depreciated.

We have held that where the gain to the public is small compared to the hardship imposed by the restrictions of a zoning ordinance, the courts are justified in declaring the ordinance void. (*Krom* v. *City of Elmhurst*, 8 Ill.2d 104; *Midland Electric Coal Corp.* v. *County of Knox*, 1 Ill.2d 200; *Myers* v. *City of Elmhurst*, 12 Ill.2d 537.) The defendant maintains that the gain to the public in maintaining the restriction, if any, is minuscule, and asserts that actually it would be advantageous to the public to relieve the lot of the restriction.

The hardship imposed upon the defendant by the enforcement of the ordinance is, contrary to most cases, not primarily a financial one. The lot is not used for industrial purposes nor is any revenue directly gained since no charge is made for parking thereon. Hardship can consist of something other than a direct monetary loss. Here, the lot is for quick and easy access by customers, salesmen who want

to visit the purchasing department, and executives. The lot serves a useful purpose in giving the users an opportunity to park without searching the streets of the area for an open parking space.

Several of plaintiffs' witnesses complained that the lot caused increased traffic. This seems improbable since the same number of executives, salesmen and customers drive into, and park in, the area. If it were not for the parking lot provided for them, they would park in the street in front of the lot or on other streets as close as possible to their destination. The undisputed evidence was that Sydney Street is not wide and that at peak hours of traffic the flow is narrowed down to one-way traffic when cars are parked on the street. The evidence establishes that the use of the lot for parking will not increase traffic hazards to the public but, on the contrary, strongly indicates that residents of the neighborhood and the traveling public will gain by alleviation of some of the hazards caused by parking on the streets.

We recognize the dilemma of municipal authorities. They are faced with the problem of preventing erosion of their zoning ordinances on the one hand and the ever-increasing question of how to keep the streets clear for traffic on the other. Off-street parking is decried by some property owners, while the urban automobile driver is plagued by congestion caused by on-street parking. We do not interfere with a zoning classification where there is a fair difference of opinion concerning its reasonableness (*Honeck* v. *County of Cook*, 12 Ill.2d 257; *Williams* v. *Village of Schiller Park*, 9 Ill.2d 596) ; but where, as here, the prohibited use will not appreciably depreciate values, does not tend to expose surrounding property to untoward offensive noises, dirt or traffic, and will help prevent traffic congestion, we are of the opinion that the zoning classification as applied to this property is unreasonable. The loss to the public, if any, appears to be offset by the public good

in permitting the present use of the lot, to say nothing of the hardship which would be worked upon the defendant in refusing to permit the use of the lot for parking.

In our opinion there is not such a substantial relation between the zoning restriction and the public welfare which requires the invocation of the police power. We therefore hold that the ordinance is void as to the defendant's lot, and the decree of the circuit court must be reversed.

*Decree reversed.*

Mr. JUSTICE DAVIS took no part in the consideration or decision of this case.