EDWARD KALOO, d/b/a Kaloo's Auto Service, Plaintiff-Appellant, v. ZONING BOARD OF APPEALS, for the City of Chicago, *et al.*, Defendants-Appellees.—ELIZABETH WHITE *et al.*, Plaintiffs-Appellees, v. EDWARD KALOO, Defendant-Appellant.

First District (2nd Division)   Nos. 1—93—2529, 1—93—3167 cons.

Opinion filed August 8, 1995.

928

Johnson, Jones, Snelling & Gilbert, of Chicago (Thomas E. Johnson, of counsel), for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Jean Dobrer, Assistant Corporation Counsel, of counsel), for appellees.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff purchased the realty located at 4750 North Hermitage Avenue in the City of Chicago (the City) on October 27, 1987. A house

and a 30-foot by 50-foot garage were situated on the property, which was zoned R4 general residence district, although previous owners, including the sellers, had used the garage for commercial purposes. Plaintiff planned to reside in the house with his family and to operate an auto repair shop in the garage. Before closing the transaction, plaintiff inquired of the Chicago zoning administrator's office as to whether he could operate his auto repair shop under the current zoning law, and he contends that he was assured by Jean Johnson, a zoning plan examiner, that his intended use of the property was permitted. Johnson's job requires her to answer questions from the public regarding the zoning of property. She did not recall speaking with plaintiff, but the parties stipulated that, when asked, Johnson normally states that a nonconforming use is permitted if it is no more intense than the nonconforming use made of the property by the preceding owner, as measured by its zoning classification.

Plaintiff invested $170,000 in the property, $65,000 of which financed the repair shop in the garage. After plaintiff purchased the property in December 1987 or January 1988, the city issued him a license to run his auto repair shop. In January 1988, the zoning administrator sent plaintiff a cease and desist letter, stating that the operation of a motor vehicle repair shop from his garage was illegal because the property was zoned residential. Plaintiff claims that he did not receive the letter. On March 23, 1988, the zoning administrator rescinded the zoning certificate which was necessary to plaintiff's being issued a license, and the department of revenue accordingly revoked the license. Plaintiff appealed that decision to the Zoning Board of Appeals (ZBA).

On August 4, 1988, the ZBA reversed the administrator, ruling that plaintiff could operate his business under certain conditions, including that: (1) he perform no body work, spray painting or engine rebuilding on the premises; (2) he conduct all repair work inside the garage; (3) he store no vehicles in the process of being repaired on the property site, city streets, sidewalks or alleys; (4) he store all such vehicles inside the garage; (5) his hours of operation run between 8 a.m. and 6 p.m. daily; and (6) he comply with all ordinances of the City of Chicago. Meanwhile, on July 1, 1988, the City had renewed plaintiff's license for one year.

Objectors, consisting of several neighbors and Alderman Schulter, appealed the ZBA's ruling, contending, *inter alia*, that the ZBA failed to consider all of the factors set forth in section 6.4—7 of the Municipal Code (the Code) relating to changes in nonconforming uses. (See Chicago Municipal Code § 17—24—120 (1990) (formerly ch. 194A, § 6.4—7).) The circuit court agreed with the objectors and re-

versed the ZBA, remanding the matter for a full evidentiary hearing, and directing the ZBA to examine all of the factors outlined in section 6.4—7. Plaintiff appealed from this decision, but, on January 10, 1991, we dismissed the appeal for want of jurisdiction, holding that the reversal and remand order was not a final one.

On remand, the ZBA, now with four new members, heard testimony and examined documentary evidence over several days. The ZBA's findings of facts included that the alley had been blocked by automobiles, that plaintiff had engaged in open spray painting of vehicles, that plaintiff used an air compressor machine, and that plaintiff had done repair work during nonbusiness hours. The ZBA determined that plaintiff's nonconforming use of the property "unfairly infringe[d] upon the health, safety and welfare of the residents in the community" and that it was not similar to or more restrictive than the prior nonconforming use. It therefore vacated its earlier decision and affirmed the administrator's ruling.

Plaintiff sought administrative review of the ZBA's ruling and was granted a stay of the ruling contingent upon his conforming with the conditions set forth in the 1988 ZBA order. Plaintiff argued that the City was estopped from enforcing section 6.4—7 because he had relied to his detriment on its assurances that he could operate his business and on its issuance of a license for the business. The circuit court found that equitable estoppel did not apply because plaintiff's reliance on the oral representation of an agent whose functions were only ministerial was not reasonable in the absence of an act of the municipality, such as legislation. In addition, the court noted that the license was not issued until after plaintiff purchased the property and that one month after its issuance, he received a cease and desist order. It also found that plaintiff's awareness that he was engaging in a nonconforming use should have led him to expect some limitations on the scope and intensity of his business. The court then held that the ZBA's decision was not against the manifest weight of the evidence, and it granted a stay pending appeal to this court.[1]

Plaintiff argues, as he did before the circuit court, that the City

---

[1]Plaintiff appealed from both the circuit court's previous order remanding the case to the ZBA and from the subsequent order affirming the ZBA's ruling. We consolidated both appeals. However, because, as previously noted, we dismissed plaintiff's first appeal for want of jurisdiction, we find that our order consolidating the cases was erroneously entered. Accordingly, we hereby vacate the order of consolidation and dismiss plaintiff's second appeal from the circuit court's October 15, 1990, order remanding the case to the ZBA for further proceedings. See *Swanson v. Cater* (1994), 258 Ill. App. 3d 157, 161, 630 N.E.2d 193, 196.

should be estopped from revoking his zoning authorization. In support of this argument, he claims: that he relied upon assurances from the City that he could operate his auto repair shop in the garage when he invested $65,000 in the shop; that the City failed to act to revoke his license until March 1988, three months after it was issued; that there is no evidence that the January 1988 cease and desist letter was sent to him; that no proceedings against him were initiated in circuit court; that he has never been cited for violating conditions contained in the 1988 ZBA order; and that the City renewed his license in July 1988.

Plaintiff finds his case "no different" than *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 171 N.E.2d 605, the leading supreme court case on the doctrine of estoppel as applied to municipalities. In *Cities Service,* the plaintiff purchased property in the City of Des Plaines upon which it planned to build a gas station. The seller had obtained a building permit for its construction and the building commissioner approved the transfer of the permit to the plaintiff. About three weeks after construction began, the city halted the work and the mayor subsequently revoked the permit because, in violation of a zoning ordinance, the station would be less than 300 feet from a church. By that time, the plaintiff had invested over $5,000 in the project and would have had to expend over $1,000 more to remove the improvements. *Cities Service,* 21 Ill. 2d at 158-59, 171 N.E.2d at 606.

The plaintiff had attempted to obtain copies of ordinances relating to service stations before it began building the station, but it had been given a copy of an outdated ordinance and, as a result, had no knowledge that its activity was in violation of the ordinance. Furthermore, evidence introduced at trial showed that the operation would not create a greater hazard to the health and safety of the public than other permitted uses of property in the vicinity. The circuit court held that the city was estopped from enforcing the ordinance, reasoning that construction was initiated by the plaintiff upon "affirmative action and apparent approval by the public authorities." *Cities Service,* 21 Ill. 2d at 159, 171 N.E.2d at 607.

The supreme court agreed. The court reiterated the general principles that "a city cannot be estopped by an act of its agent beyond the authority conferred upon him"; that the onus is on the individual or entity dealing with a governmental body to ascertain that the agents of that body act within their bounds; and that this is true even if the agent is unaware of the limits of her authority. (*Cities Service,* 21 Ill. 2d at 160, 171 N.E.2d at 607.) The court explained that "[i]n matters involving strictly public rights the courts do not

interpose to hold the municipality estopped except under special circumstances which would make it highly inequitable or oppressive to enforce such public rights." (*Cities Service*, 21 Ill. 2d at 161, 171 N.E.2d at 607.) Such special circumstances can be demonstrated by a party's showing that (1) its actions were "induced by the conduct of municipal officers"; and (2) that the denial of relief would result in "substantial loss and the municipality would be permitted to stultify itself by retracting what its agents had done." (*Cities Service*, 21 Ill. 2d at 161, 171 N.E.2d at 608.) The court emphasized, however, that if a party is aware of an ordinance or makes no attempt to learn of the applicable ordinances, the issuance of a permit in violation thereof will not result in a finding that the city is estopped from revoking the permit. Moreover, even in the absence of such knowledge, "the mere issuance of an unauthorized permit and reliance thereon to one's injury does not provide grounds for relief." (*Cities Service*, 21 Ill. 2d at 163, 171 N.E.2d at 609.) Noting that the city essentially ratified the issuance of the permit to build a service station by failing to act to revoke the permit for seven months, the court found that the circumstances in *Cities Service* warranted application of the doctrine of equitable estoppel against the city. *Cities Service*, 21 Ill. 2d at 163, 171 N.E.2d at 609.

The case at bar is readily distinguishable, as the circuit court noted. First, plaintiff purchased the property prior to obtaining his license to operate the auto repair shop; he therefore did not rely on the issuance of the license when investing in the property. In addition, even if a zoning department employee informed him that his intended use was proper, reliance on that verbal assurance was unjustified, given that she could not assess whether his nonconforming use would be similar to or less intensive than the prior use. (See *Lake Shore Riding Academy, Inc. v. Daley* (1976), 38 Ill. App. 3d 1000, 1003, 350 N.E.2d 17, 19 (the unauthorized act or representation of a ministerial officer is not an affirmative act which induces reliance).) Finally, unlike *Cities Service*, the City did not wait seven months to revoke plaintiff's license. Assuming, *arguendo*, that plaintiff did not receive the cease and desist letter written within one month of the issuance of the license, the City acted within three months to revoke the license. Although plaintiff's license was renewed during the pendency of the first proceeding before the ZBA, the mistaken issuance of a license in violation of an ordinance does not result in application of estoppel against the City. (See *City of Chicago v. Unit One Corp.* (1991), 218 Ill. App. 3d 242, 246, 578 N.E.2d 194, 197-98.) Moreover, since plaintiff was aware that his operation of the auto repair shop was in jeopardy when he received the renewal

notice, he should have been on notice that the renewal was in error, or at least that it was contingent upon the ZBA's ruling. As the City points out, if it were estopped from enforcing the ordinance because of a mistakenly issued or renewed license, the violation would exist "in perpetuity." *Lake Shore Riding Academy*, 38 Ill. App. 3d at 1003, 350 N.E.2d at 20.

This analysis comports with earlier decisions of this court. In *Armond v. Sawyer* (1990), 205 Ill. App. 3d 936, 563 N.E.2d 900, the plaintiff's liquor license was renewed semi-annually for 12 years in violation of a referendum, the existence of which was known to the plaintiff. In holding that the city was not estopped from revoking the plaintiff's license, despite the unauthorized renewals, we refused to characterize the renewals as affirmative acts by the city, especially since the plaintiff was aware of the referendum. *Armond*, 205 Ill. App. 3d at 939, 563 N.E.2d at 902-03; see also *Leong v. Village of Schaumburg* (1990), 194 Ill. App. 3d 60, 69, 550 N.E.2d 1073, 1079-80 (holding that the village did not waive its right to revoke the plaintiff's liquor license on the grounds that he had been convicted of a felony, even though it renewed the license through a routine procedure whereby renewal notices were sent to all licensed facilities); *People ex rel. Satas v. City of Chicago* (1972), 5 Ill. App. 3d 109, 111, 113, 282 N.E.2d 739, 740, 742 (holding that the city was not estopped from enforcing a zoning ordinance when a zoning department employee mistakenly stamped the plaintiff's application for a license to operate a laundromat to indicate compliance with the ordinance).

■ Accordingly, neither the oral assurances of a zoning department employee, nor the issuance and renewal of plaintiff's license constituted an affirmative act by the City for purposes of the doctrine of equitable estoppel. We therefore hold that plaintiff cannot satisfy the first prong of the *Cities Service* exception to the general rule that a municipality cannot be bound by the agent's acts which exceed her authority and that the City is not estopped from enforcing the zoning ordinance. See *Gorgees v. Daley* (1993), 256 Ill. App. 3d 143, 147, 628 N.E.2d 721, 725 (noting that a finding of estoppel against a public body is disfavored and should be limited to those circumstances in which it would not defeat public policy).

Plaintiff next contends that the evidence fails to support the ZBA's finding that his nonconforming use of the property was more intense than the prior use by the sellers for a painting contractor business. He also contends that the ZBA erred in its evidentiary rulings and denied him due process by unreasonably depriving him of his property right.

When reviewing the decision of an administrative agency, our

function is not to reweigh the evidence; the findings and conclusions of the agency regarding questions of fact are considered *prima facie* correct and will not be disturbed unless they are against the manifest weight of the evidence. (*Pesce v. Board of Review* (1987), 161 Ill. App. 3d 879, 881, 515 N.E.2d 849, 851; *Garland v. Department of Labor* (1984), 104 Ill. 2d 383, 392, 472 N.E.2d 434, 437; 735 ILCS 5/3—110 (West 1992).) A finding is against the manifest weight of the evidence if all reasonable persons would agree that the finding is erroneous and that the opposite conclusion is evident. (*Danko v. Board of Trustees of the City of Harvey Pension Board* (1992), 240 Ill. App. 3d 633, 645, 608 N.E.2d 333, 341.) However, reviewing courts are not required to give such deference to an administrative agency's conclusions of law, and a decision based upon an erroneous construction of a statute or ordinance will not stand. See *Pesce*, 161 Ill. App. 3d at 881, 515 N.E.2d at 851.

In the present case, the ZBA was required to determine whether plaintiff's nonconforming use of the property was permissible under the City's zoning ordinances. Although nonconforming uses are permitted under certain circumstances, the goal of the ordinance is to gradually eliminate all nonconforming uses. (Chicago Municipal Code § 17—24—010 (1990) (formerly ch. 194A, § 6.1).) Nonconforming uses, buildings, and structures cannot remain indefinitely if they "substantially and adversely affect the orderly development and taxable value of other property." (Chicago Municipal Code § 17—24—010 (1990) (formerly ch. 194A, § 6.1).) A nonconforming use may be changed to another nonconforming use if it is "similar to or more restrictive than the prior non-conforming use at the site." (Chicago Municipal Code § 17—24—120 (1990) (formerly ch. 194A, § 6.4—7).) The Code instructs that

> "[t]o determine whether the proposed changed use meets the above standard, there shall be an evaluation of the hours of operation, vehicular traffic and noise levels generated by the use, the number of people reasonably expected to be attracted to the premises and other factors affecting other property or uses in the neighborhood in which it is located." (Chicago Municipal Code § 17—24—120 (1990) (formerly ch. 194A, § 6.4—7).)

The zoning board has discretionary authority to determine if a proposed nonconforming use should be prohibited or restricted for the benefit of the public. Thus, although the right to a nonconforming use is a property right, it is subject to restrictions as deemed necessary for the public safety, health, or welfare. *Furlong v. City of Chicago* (1986), 142 Ill. App. 3d 347, 350, 491 N.E.2d 1301, 1303-05; accord *Smith v. Town of Normal* (1992), 238 Ill. App. 3d 944, 956-57, 605 N.E.2d 727, 736.

In the case at bar, the ZBA heard testimony from several individuals regarding the prior use of the property and the nature of plaintiff's use. Susan Lund testified that she and her husband owned the property just prior to plaintiff. They ran a painting contractor business and used the garage to store paints, tarps, ladders, and business vehicles. Mr. Lund and his employees would pick up equipment from the garage in the morning and return in the evening. They did not work on weekends. Customers rarely came to the garage since the painting work was done on the site to be painted.

Alderman Schulter made a statement to the ZBA opposing plaintiff's nonconforming use of the property. He contended that plaintiff's auto repair shop in the garage was a much more intensive use than the Lunds' use, which was mainly for storage, a standard residential use of a garage. Loralee Swan rented the house from the Lunds when they owned the property. She recalled that she never saw cars in the alley near the garage. After plaintiff purchased the property, she still lived and worked in the neighborhood and had noticed, on a daily basis, cars parked in the alley near the garage and people talking with plaintiff. Swan conceded that plaintiff had terminated her lease when he bought the property.

Four other neighbors testified that the activity in and near the garage had increased since plaintiff moved in. One of those neighbors, Roger Kennedy, testified that plaintiff rebuilt engines and transmissions, and that he had, in fact, painted Kennedy's car and rebuilt its transmission. Other testimony indicated that plaintiff sometimes worked on Sundays, that he had cars parked in nearby business parking lots and in the alley, that cars sometimes blocked the alley, and that plaintiff worked on vehicles inside and outside of the garage.

Sharon Wisen, Alderman Schulter's assistant, testified that she was a trained building inspector. Prior to plaintiff's ownership of the property, between June 1986 and August 1987, she inspected the property about six times. She never saw the garage open, a sign on the garage, or vehicles going in and out of the garage. In December 1987, after plaintiff purchased the property, she made an inspection in response to a complaint made to the alderman. At that time, she saw body work and auto paint spraying being conducted there. She obtained a copy of the real estate sales contract and confirmed that the property was zoned residential.[2] She visited the property again in August 1988 in response to a complaint that an addition was being

_____

[2]A copy of the real estate sales contract is not of record. However, plaintiff did not dispute Wisen's testimony that it indicated that the property

added to plaintiff's garage without a permit. Plaintiff eventually tore down the structure. On various other visits to the property, she observed two stripped vehicles on plaintiff's property, cars blocking the alley, and an engine hoisted out of a vehicle.

Plaintiff testified that he does not rebuild engines; he sends them to a machine shop to be rebuilt. He never keeps oil drums outside, except for a couple of occasions when the recycling company was late in picking them up. He did not strip or repair cars in the alley. He had never been cited for parking cars in the alley.

Plaintiff claims that business receipts from his business, which he attached to his "Reply Memorandum In Support of Plaintiff's Motion to Reverse The ZBA's Decision," indicate that he averaged only 8.35 customers per month. He argues that this number would be unlikely to contribute to traffic congestion.

Three neighbors' testimony corroborated plaintiff's testimony regarding his use of the property. These neighbors had no complaints regarding the operation of his auto repair shop.

Assistant zoning administrator Paul Woznicki testified that he observed cars parked in the alley while plaintiff ran his shop. However, he could not tell if they were connected to plaintiff's business.

Several photographs taken by a neighbor on different dates were admitted into evidence, including a photograph of large drums in plaintiff's yard, plaintiff working on a vehicle in the alley, a car being worked on in plaintiff's backyard, and plaintiff working on a car in a nearby restaurant parking lot.

■ Based upon this evidence, the ZBA's determination that plaintiff's nonconforming use of the property was more intense than the prior use cannot be deemed against the manifest weight of the evidence. (See *Danko*, 240 Ill. App. 3d at 645, 608 N.E.2d at 341.) The fact that conflicting evidence was presented does not warrant reversal of the agency's decision. (See *East St. Louis School District No. 189 v. Hayes* (1992), 237 Ill. App. 3d 638, 646, 604 N.E.2d 557, 563.) There was ample evidence, including the photographs and the testimony of neighbors and Wisen, to support the ZBA's conclusion that plaintiff's use of the property was more intense than the prior use and that an auto repair shop was not conducive to the health and welfare of the public in a residential area. Moreover, except for citations relating to the standard of review, plaintiff cites no case law supporting his argument that the evidence does not support the ZBA's decision. 134 Ill. 2d R. 341(e)(7).

---

was zoned residential.

Plaintiff compares the evidence favoring his version of the nature of his business with that of the previous business conducted on the premises and urges this court to conclude that the ZBA's findings were against the manifest weight of the evidence. However, plaintiff overlooks that it is not the function of this court to reweigh the evidence; it was the ZBA's responsibility to resolve conflicts in the testimony and to assess credibility. *East St. Louis School District No. 189*, 237 Ill. App. 3d at 646, 604 N.E.2d at 563.

■ Plaintiff argues that any occasional parking or noise problems should have been dealt with through citations and other enforcement proceedings and not through a proceeding on a nonconforming use. He thus contends that the ZBA erroneously converted an enforcement action into a nonconforming use question, thus putting the burden of proof on him rather than on the City. Obviously, the type of enforcement proceedings plaintiff envisions would allow him to continue operating his business. Recognizing the broad latitude administrative agencies are granted in carrying out their duties and the City's goal of eventually eliminating nonconforming uses, we conclude that the ZBA acted within its authority in bringing a nonconforming use proceeding. See *Lake County Board of Review v. Property Tax Appeal Board* (1988), 119 Ill. 2d 419, 428, 519 N.E.2d 459, 463; Chicago Municipal Code § 17—24—010 (1990) (formerly ch. 194A, § 6.1).

Plaintiff also argues that the ZBA erred in refusing to permit him to introduce evidence showing that most of the adjacent property was zoned commercial. He contends that the ZBA ignored a long line of cases holding that a determination of the reasonableness of a zoning ordinance requires examining the character of the whole neighborhood. However, the cases plaintiff relies on are inapposite. *City of Loves Park v. Woodward Governor Co.* (1958), 14 Ill. 2d 623, 153 N.E.2d 560, and *Mobil Oil Corp. v. City of Rockford* (1972), 8 Ill. App. 3d 649, 290 N.E.2d 7, deal with challenges to the constitutionality of a zoning ordinance as applied to particular property. In those cases, the character of the neighborhood was relevant to the court's determination of the reasonableness of the cities' enforcement of the ordinance; if property values would decline and the health and safety of the public in the area would be jeopardized, the zoning ordinance would not be deemed void. (See *City of Loves Park*, 14 Ill. 2d at 626-27, 153 N.E.2d at 562-63.) And, in *Nickle v. Board of Appeals* (1963), 41 Ill. App. 2d 173, 190 N.E.2d 136, we held that the decision of the ZBA permitting a change in a nonconforming use was supported by the evidence. There, the defendant sought to use the ground floor of an apartment building zoned residential for a restaurant and

hospitality bar. That portion of the building had previously been used for manufacturing and commercial purposes. We agreed with the ZBA that the defendant's proposed use would not expand or extend the prior use. The testimony before the ZBA indicated that two taverns were located within blocks of the building at issue; this examination of the surrounding neighborhood was relevant to show that the area, previously zoned for business, had not yet evolved into a completely residential district.

■ In contrast, in the case at bar, the ZBA applied section 6.4—7 of the Code to determine if plaintiff's nonconforming use of the property was permissible. That section provides that a nonconforming use "may be changed to a use permitted in the same district as the nonconforming use which presently occupies the building or structure or to a use permitted in a more restrictive district." (Chicago Municipal Code § 17—24—120 (1990) (formerly ch. 194A, § 6.4—7).) Thus, the ZBA properly ruled that an examination of adjacent commercially zoned property was not relevant to its ruling because commercial zoning is not more restrictive than residential zoning.

■ Plaintiff next contends that the ZBA erred when it refused to admit evidence on the intensity of the use of the property as a garbage truck repair and storage facility from 1923-86, but then considered that use in its ruling. However, while the ZBA made note of the nonconforming use by a refuse disposal company from 1923-86, it does not appear to have relied on that use in making its determination. The ruling goes on to discuss the "last use" of the garage for the painting contractor's storage of vehicles and supplies. The ZBA then states that plaintiff's use is more intense than the "prior apparently innocuous truck storage use." This finding, referring to the prior use in the singular, apparently refers not to the use by the refuse disposal company, but rather to the use by the painting contractor.

Moreover, the ZBA properly focused on the last use of the garage before plaintiff purchased the property. The plain language of section 6.4—7 refers only to the prior use in the singular. If an owner could engage in a nonconforming use of property that was equally or less intense than all prior uses, the goal of the Code to eventually eliminate all nonconforming uses would be thwarted. See *City of Chicago v. Gomez* (1993), 256 Ill. App. 3d 518, 519, 628 N.E.2d 243, 244-45 (in construing ordinances, the rules of statutory construction apply and legislative intent must be discerned from the plain language of the ordinance if there is no ambiguity).

■ Finally, plaintiff argues that the ZBA erred in refusing to take testimony by affidavit. Plaintiff sought to introduce affidavits signed

by neighbors and a noise expert. The ZBA refused to accept the proffered evidence because the City would be deprived of an opportunity to cross-examine those witnesses. In the case of the noise expert's affidavit, the ZBA indicated that it would accept a transcript of a deposition taken of the expert after plaintiff explained that it would be too costly to have him come to testify. Plaintiff apparently did not depose the expert because he never offered the transcript for consideration by the ZBA. Plaintiff cites no authority for the proposition that the ZBA was required to consider the affidavits. (134 Ill. 2d R. 341(e)(7).) We have previously observed the importance of cross-examination of witnesses in a zoning board proceeding, finding that "procedures at zoning board hearings must include the right to relevant cross-examination." (*E&E Hauling, Inc. v. County of Du Page* (1979), 77 Ill. App. 3d 1017, 1022, 396 N.E.2d 1260, 1264.) Accordingly, plaintiff's claim of error in this regard must fail.

Based upon the foregoing, plaintiff has failed to show that the City should be estopped from enforcing the zoning ordinance or that the ZBA's decision that his nonconforming use was unlawful was against the manifest weight of the evidence.

Affirmed.

HARTMAN and DiVITO, JJ., concur.