FOURTH DIVISION

FILED: February 10, 2000

No. 1-98-4589

NORTH AVENUE PROPERTIES, L.L.C., an )  APPEAL FROM THE

Illinois limited liability company, )  CIRCUIT COURT OF

)  COOK COUNTY

Plaintiff-Appellant, )

)

) 

)

ZONING BOARD OF APPEALS OF THE CITY OF )

CHICAGO, ILLINOIS; JOSEPH J. SPINGOLA; )

DEMETRI KOSTANTELOS; LEROY K. MARTIN, JR.; )

GIGI McCABE-MIELE; and GDH INVESTMENTS, )

L.L.C., an Illinois limited liability )        

company, )  HONORABLE

)  THOMAS A. HETT,

Defendants-Appellees. )  JUDGE PRESIDING.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, North Avenue Properties, L.L.C., appeals from a circuit court order confirming two decisions of the Zoning Board of Appeals of the City of Chicago (Board).  For the reasons which follow, we: reverse the order of the circuit court; set aside the decisions of the Board; and remand this matter to the Board for further proceedings.

The facts relevant to the disposition of this appeal are not in dispute.  GDH Investments, L.L.C. (GDH), is the owner of the property located at 934-44 West North Avenue in Chicago (hereinafter referred to as "the Property").  GDH applied for zoning certifications from the Zoning Administrator of the City of Chicago (Administrator) to allow the Property, which is located in a Planned Manufacturing District, to be used for retail sales and to allow the premises located at 955 West Weed Street, which is located in a General Manufacturing District, to be used as an accessory parking facility for the Property.  The Administrator denied both applications on the basis that the proposed uses for which GDH sought certification did not conform to the Chicago Zoning Ordinance (Ordinance)(Chicago Municipal Code §17-1 
et
 
seq.
 (1999)).  Thereafter, GDH filed applications with the Board for the approval of zoning variations in the nature of special uses to permit the two properties to be used for the above-stated purposes.  The Board assigned its calendar number 374-97-S to the applica­tion relating to the use of the Property and number 375-97-S to the application relating to the use of 955 West Weed Street.

Pursuant to section 11.7-2 of the Ordinance (Chicago Municipal Code §17-11.7-2 (1999)), the plaintiff, along with other owners of real estate located within 100 feet of the lot lines of the Property and 955 West Weed Street, was notified of GDH's applications for zoning variations.  The plaintiff filed a written objection to the applications and appeared before the Board in support of the objection.

After conducting hearings on October 17 and December 19, 1997, the Board granted both of GDH's applications for variations.  Thereafter, the plaintiff timely filed a complaint for administrative review in the circuit court, seeking an order reversing the decisions of the Board and denying both of GDH's applications for variations.  After striking portions of the plaintiff's com­plaint and a number of the exhibits attached thereto, the circuit court denied the relief requested by the plaintiff and confirmed the Board's decisions.  This appeal followed.

The plaintiff contends that the circuit court erred in striking portions of its complaint and confirming the Board's decisions.  The plaintiff argues that the circuit court should have set aside the Board's decisions because the decisions: 1) were based on the erroneous finding that GDH's applications for zoning variations satisfied the requirements of the Ordinance; and 2) were "tarnished" because a member of the Board, its chairman, was biased against the plaintiff.

In an administrative review proceeding, the function of this court is the same as that of the circuit court, namely, to determine, based on a review of the record which was before the administrative agency, whether the agency's findings and orders are against the manifest weight of the evidence or whether the agency acted arbitrarily, without cause, or in clear abuse of its discretion.  
Leong v. Village of Schaumburg
, 194 Ill. App. 3d 60, 64, 550 N.E.2d 1073 (1990).  A finding of fact is against the manifest weight of the evidence if all reasonable people would agree that the finding is erroneous and that the opposite conclusion is clearly evident.  
Danko v. Board of Trustees of the City of Harvey Pension Board
, 240 Ill. App. 3d 633, 645, 608 N.E.2d 333 (1992).  Unless we are able to conclude that the agency's findings of fact are against the manifest weight of the evidence, we must accept those findings as 
prima
 
facie
 true and correct.  735 ILCS 5/3-110 (West 1998).  We need not, however, give the same deference to an administrative agency's conclusions of law.  
Raintree Health Care Center v. Illinois Human Rights Comm'n
, 173 Ill. 2d 469, 479, 672 N.E.2d 1136 (1996).  Since the construction of a statute or ordinance is a question of law, our review is 
de
 
novo
.  
MacDonald v. Board of Trustees of the Park Ridge Police Pension Fund
, 294 Ill. App. 3d 379, 382, 690 N.E.2d 636 (1998).  An admin­istrative decision based upon an agency's erroneous construction of an ordinance, therefore, will not stand.  
Kaloo v. Zoning Board of Appeals
, 274 Ill. App. 3d 927, 934, 654 N.E.2d 493 (1995).

When reviewing the decision of an administrative agency, we are limited to reviewing the record which was before the agency and may not consider "new or additional evidence in support of or in opposition to any find­ing, order, determination or decision of the administrative agency".  735 ILCS 5/3-110 (West 1998); 
Abrahamson v. Illi­nois Department of Professional Regulation
, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992).  Additionally, arguments not raised before the administrative agency are waived for purposes of administrative review.  
Texaco-Cities Service Pipeline Co. v. McGaw
, 182 Ill. 2d 262, 278-79, 695 N.E.2d 481 (1998).  A simple application of these standards for review allows us to dispose of two of the plaintiff's assignments of error in a summary fashion.

In response to GDH's motion to strike portions of the plaintiff's complaint, the circuit court found that 10 paragraphs set forth in the complaint and 5 exhibits attached thereto asserted facts and matters outside of the record before the Board and, as a consequence, struck the paragraphs and exhibits from the complaint.  The plaintiff asserts that the circuit court erred in striking the material from its complaint, arguing that the court was entitled to consider the matters alleged and the supporting exhibits as they are "readily verifiable" and "capable of instant and unquestionable demonstration."  We disagree.

The paragraphs stricken from the plaintiff's complaint contain allegations of oral and written communications in the nature of requests for information from the plaintiff's attorney to GDH's attorney and GDH's attorney's responses to those requests.  The paragraphs alleged that, via these communications, the plaintiff's attorney had requested informa­tion relating to the applications, such as copies of the proposed site plan for the Property and the lease for the parking spaces at 955 West Weed Street.  The stricken exhibits consist of copies of correspondence from the plaintiff's attorney to GDH's attorney seeking information, written responses from GDH's attorney, and a copy of a site plan for the Property.  None of the stricken exhibits or the factual assertions set forth in the stricken paragraphs are found in the record before the Board.  Nonetheless, the plaintiff contends that the circuit court was entitled to con­sider these matters in determining whether the plaintiff was denied due process and an ability to properly present its objec­tions to GDH's applications by reason of the "actions and stonewalling tactics of GDH's counsel."  According to the plain­tiff, the Board refused to allow it to enter evidence of such actions into the record.  We, however, find nothing in the record to suggest that the plaintiff ever attempted to do so.

At the conclusion of the hearing on October 17, 1997, the plaintiff requested a continuance, informing the Board only that it anticipated presenting two witnesses whose combined testimony would take about 45 minutes.  The Board granted the continuance, and the matter was set over to December 19, 1997.  When the matter was first called on December 19, the plaintiff's attorney informed the Board that he had received GDH's modified parking plan only two days earlier and, due to his having been out of town, had not had an opportunity to review it.  The plain­tiff's attorney stated that he would like an opportunity to review the plan with the plaintiff.  GDH's attorney objected to any further continuances of the matter.  He stated:

"I'm sorry his clients are out of town, but he's known about this for two months.  The plans we sent over as soon as they were ready, they made no substantive changes in the issues involved, or in the drawings, except we now show the second tenant on there, basi­

cally, and there would be no basis to continue this.  I don't think he's entitled to a continuance.  It would cause us extreme hardship and prejudice."

There­after, the following exchange took place between the Board's chairman and the plaintiff's attorney:

"Chairman Spingola:  I think you got at least an hour to review them.

Mr. Bellas:  Mr. Chairman, contrary to what Mr. Wigoda says, there are some substantial...

Chairman Spingola:  Mr. Wigoda said what he's saying. I'm saying what I'm saying.  You got about an hour before we get to the case, maybe two.

Mr. Bellas:  Thank you, Mr. Chairman."

Our examination of the record reveals that the plaintiff made no further requests for a continuance and that it made no allegations that GDH or its attorney had employed delaying tactics.

The plaintiff correctly asserts that, in addition to the matters of record before an administrative agency, a court conducting an administrative review may also consider any fact of which judicial notice may be taken.  
Muller v. Zollar
, 267 Ill. App. 3d 339, 341, 642 N.E.2d 860 (1994).  However, the matters stricken by the trial court are not facts and docu­ments of which judicial notice could be taken.  None find their origin in a public record, and a testimonial foundation for each document would need to be laid before it could be received into evidence.  Consequently, the trial court properly struck the paragraphs and exhibits in question­.

Next, we will briefly address the plaintiff's claim that the circuit court erred in failing to find that the Board was biased against it.  The plaintiff's entire claim of bias is based on  brief, gratuitous, and irrelevant observations made by the Board's chairman at the very end of the hearing on December 19, 1997, after all of the evidence had been received.  To paraphrase these comments, the chairman said he remembered other cases involving the particular planned manufacturing district within which the Property is located and that those who were profiting from conducting retail operations within that district "tend to quibble like little women."  He went on to state that he was sure that shoppers would park at one property in the district and shop at another and that, although each of the retailers would suffer some adverse effect from this, each would also benefit.  The chairman concluded by suggesting that if all of the retail operators in the district "kept it all in that perspective, *** [they would] be cheering for one another instead of arguing with one another."

The plaintiff's attorney made no claim of bias at the time the chairman made these comments or at any time prior to the issuance of the Board's decisions on January 12, 1998.  Furthermore, the plaintiff's complaint for administrative review, which was filed in the circuit court on February 17, 1998, did not assert bias on the part of the Board as a ground for reversing its decisions.  Rather, the record before us reveals that the plaintiff's first allegation that the chairman's comments demonstrated bias on the part of the Board appears in ­a trial memorandum it filed with the circuit court on September 16, 1998.  Based upon the plaintiff's failure to raise its claim of bias in a timely manner, the issue is waived.  As our supreme court held in 
E & E Hauling, Inc. v. Pollu­tion Control Board
, 107 Ill. 2d 33, 38-39, 481 N.E.2d 664 (1985):

"Generally, of course, a failure to object at the original proceeding constitutes a waiver of the right to raise the issue on appeal. [Citation.]  'A claim of disqualifying bias or partiality on the part of a member of the judiciary or an administrative agency must be asserted promptly after knowledge of the alleged disqualification.'  (
Duffield v. Charleston Area Medical Center, Inc.
 (4th Cir. 1974), 503 F.2d 512, 515.)  The basis for this can readily be seen.  To allow a party to first seek a ruling in a matter and, upon obtaining an unfavorable one, permit him to assert a claim of bias would be improper."

Finally, we will address the questions of whether the Board's decisions are against the manifest weight of the evidence or based on an erroneous construction of the Ordinance.

Section 11.10-4 of the Ordinance provides in pertinent part that no special use shall be granted by the Board unless the special use:

"(1) a.  Is necessary for the public convenience at that location;

b.  Is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; and 

(2) Will not cause substantial injury to the value of other property in the neighborhood in which it is to be located; and

                          ***

(4)  Such special use shall conform to the applicable regulations of the district in which it is to be located.

(5)  In a Planned Manufacturing District, Special Uses shall conform to all applicable regulations and standards as set forth in Title 17, and in addition shall also conform to the supplemental use regulations set forth in 16-8-080-4(a-e)."  
Chicago Municipal Code §17-11.10-

4 (1999)
.

The plaintiff challenges several findings which the Board made in approving GDH's application for a special use of the Property.  The Board found that the proposed retail use of the Property "will furnish adequate off-street parking to be located on the site and at 955 West Weed Street, as provided in companion application No. 375-97-S" and "that the proposed use will meet the off-street parking requirements of the PMD [Planned Manufacturing District] ordinance."  According to the plaintiff, these findings are against the manifest weight of the evidence as GDH failed to comply with the requirements of section 5.8-5 of the Ordinance.  Section 5.8-5 provides that:

"In cases where parking facilities are permitted on land other than the zoning lot on which the building or use served is located, such facilities shall be in the same possession as the zoning lot occupied by the building or use to which the parking facilities are accessory.  Such possession may be either by deed or long term lease, the term of such lease, when provided for as a Special Use, to be determined by the Board of Appeals.  The building or use shall be served for a period not to exceed the maintenance of the required parking facilities.  The requisite parking facilities are required at all times; otherwise the Zoning Admin­

istrator can recommend action through the Corporation Counsel to have the use discontinued."  Chicago Municipal Code §17-5.8-5 (1999).

In order to comply with the parking space requirements of the Planned Manufacturing District within which the Property is located, GDH was required to provide approximately 61 parking spaces.  Since that number of parking spaces could not be pro­

vided on the Property, GDH was required to make off-site parking available.  To that end, GDH entered into a "Parking Agreement" with Mid-City Parking, Inc. (Mid-City), the owner of a public parking lot located at 955 West Weed Street.  The Parking Agreement provides that 34 parking spaces at 955 West Weed Street shall be "made available" to the tenants, employees, invitees, customers, and other persons affiliated with the Property "on identical terms and conditions, and pursuant to identical rules and regu­lations, as other Parking Spaces are generally made available to the public."  Although the Parking Agreement is a bit ambiguous on the question of whether the 34 parking spaces are to be reserved for the exclusive use of the tenants, employees, invitees, customers, and other persons affiliated with the Prop­erty, a representative of GDH testified before the Board that such was, indeed, the case.  Nonetheless, the plaintiff argues that, since the Parking Agreement is not a lease, it does not, as a matter of law, comply with the require­ments of section 5.8-5 of the Ordi­nance.  Consequently, it contends, the Board's findings that the proposed retail use of the Property would furnish adequate off-street parking and that the off-street parking provided met the requirements of the Planned Manufac­

turing District ordinance are against the manifest weight of the evidence.  According to the plaintiff, the Parking Agreement is, at most, a license agree­ment.

The determination of whether a contractual agreement is a lease or a license is made by analyzing the legal effect of its provisions.  
Jackson Park Yacht Club v. Department of Local Govern­ment Affairs
, 93 Ill. App. 3d 542, 546, 417 N.E.2d 1039 (1981).  A lease is a definite agreement as to the extent and bounds of the property demised and transfers exclusive possession thereof to the lessee.  
Metroweb Corp. v. County of Lake
, 130 Ill. App. 3d 934, 937-38, 474 N.E.2d 900 (1985).  In contrast, a license agreement merely entitles a party to use the premises for a specific purpose, subject to the management and control retained by the owner.  
Chemical Petroleum Exchange, Inc. v. Metropol­itan Sanitary District of Greater Chicago
, 81 Ill. App. 3d 1005, 1009-10, 401 N.E.2d 1203 (1980).  The Parking Agreement entered into between GDH and Mid-City is not definite as to which 34 parking spaces at 955 West Weed Street are being reserved for use by the tenants, employees, invitees, customers, and other persons affiliated with the Prop­erty, and more importantly, it does not transfer possession of the parking spaces to GDH.  Instead, it merely entitles certain persons affiliated with the Property to use 34 parking spaces, subject to rules and regu­

lations promulgated by Mid-City.  Therefore, the Parking Agreement is a license rather than a lease.

The Board makes no convincing argument in support of the notion that the Parking Agreement is anything other than a license.  Instead, it argues that, since the purpose of section 5.8-5 is to ensure the availability of parking facilities for the users of the facility served, its finding that the Parking Agreement accomplishes that end and is the type of agree­ment contemplated under section 5.8-5 is not erroneous.  Alternatively, the Board argues that, even if the Parking Agreement does not satisfy the requirements of section 5.8-5, GDH's failure to satisfy the parking requirements of the Planned Manu­facturing District within which the Property is located does not require a denial of its application for a special use.

Our resolution of this issue hinges on the interpretation of section 5.8-5 of the Ordinance.  As our supreme court held in 
Abrahamson
, 153 Ill. 2d at 91:

"The primary rule of statutory interpretation is that a court should ascertain and give effect to the intention of the legislature.  The legislative intent should be sought primarily from the language used in the statute.  [Citation.]  The statute should be evaluated as a whole; each provision should be construed in connection with every other section.  [Citation.]  'Where the language of the act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature.'  
Sheahen
, 45 Ill. 2d at 84."

The same rules applicable to the construction of statutes apply to the construction of municipal ordi­nances.  
In re Application of the County Collector
, 132 Ill. 2d 64, 72, 547 N.E.2d 107 (1989).

Because a question as to the proper interpretation of an ordinance is one of law, a court of review is not bound by an administrative agency's interpretation.  See 
Abrahamson
, 153 Ill. 2d at 97.  If the language of the ordinance is clear and unambiguous, the court must interpret the ordinance according to its terms without resorting to aids of construction.  See 
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254, 659 N.E.2d 961 (1995).  If, however, the ordinance is ambiguous, we will give substantial weight to the manner in which the agency charged with its administration and enforcement has interpreted it as we find this interpretation ­to be an informed source for ascertaining legislative intent.  See 
Abrahamson
, 153 Ill. 2d at 97-98.  The initial question of whether a statute or ordinance is ambiguous is also one of law and, therefore, subject to a 
de
 
novo
 determination on review.  See 
General Mills, Inc. v. Illinois Commerce Comm'n
, 201 Ill. App. 3d 715, 720, 559 N.E.2d 225 (1990).

We find nothing ambiguous about the sections of the Ordinance which are relevant to our resolution of this case.  Section 11.10-4 unequivocally provides that "[n]o special use shall be granted" by the Board unless the special use, among other things, conforms to the applicable regulations of the district in which it is to be located and, in a Planned Manufacturing District, conforms to all applicable regulations and standards set forth in Title 17 of the Chicago Municipal Code.  Chicago Municipal Code §17-11.10-4 (1999).

It is apparently undisputed that the Property is located within a Planned Manufacturing District and that GDH's proposed plan for the Property provided insufficient on-site parking spaces to comply with the requirements of that district.  As a consequence, GDH is required to provide parking facilities on land other than the Property in order to qualify for a special use.

Section 5.8-5 of the Ordinance clearly and plainly states that, when off-site parking facilities are provided, "such facilities 
shall
 be in the same possession as the zoning lot occupied by the building or use to which the parking facilities are accessory" and that "[s]uch possession may be either by deed or long term lease".  [Emphasis added.]  Chicago Municipal Code §17-5.8-5 (1999).  Furthermore, although it is not referenced by the parties, section 17-3.1(b) of the Ordinance provides that the proper construction of the word "shall," as used in the Ordinance, "is mandatory and not discretionary."  Chicago Municipal Code §17-3.1(b) (1999).

Whether measured by their common and accepted usage or viewed as legal terms of art, "lease" and "license" are not synonyms.  See Webster's Third New International Dictionary 1286 (lease), 1304 (li­cense)(1993); Black's Law Dictionary 889 (lease), 919-20 (license)(6th ed. 1990).  As we found earlier, the Parking Agreement entered into between GDH and Mid-City is a license, not a lease.  Since the 34 parking spaces which are the subject of the Parking Agreement are not in the possession of GDH by either deed or long term lease, the plain requirements of section 5.8-5 have not been met.  Further, since the Parking Agreement is a mere license to use the 34 parking spaces, it does not vest possession of those spaces in GDH as is required by section 5.8-5.

The Board's decisions granting GDH's special use applications are based on an erroneous construction of section 5.8-5 of the Ordinance; namely, that a license agreement for off-

site parking facilities satisfies the requirements of the section.  Since, as a matter of law, the Parking Agreement does not vest GDH, either by deed or lease, with the requisite possession of the parking spaces at 955 West Weed Street, GDH failed to satisfy the off-street parking requirements of the Planned Manufacturing District within which the Property is located.  The Board's finding to the contrary is, therefore, against the manifest weight of the evidence.

For the foregoing reasons, we: reverse the circuit court's order confirming the Board's decisions; set aside the Board's decisions granting GDH's applications for special use; and remand this matter to the Board for further proceedings consistent with this opinion.

Circuit court order reversed; Board's decisions set aside; cause remanded.

SOUTH and HALL, JJ., concur.