FOURTH DIVISION
October 11, 2007

No. 1-05-3835

| | | |
|---|---|---|
| JAMES ELLISON, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 99 CH 18598 |
| | ) | |
| ILLINOIS RACING BOARD; LORNA PROPES, | ) | |
| JAMES KANE, LOUISE O'SULLIVAN, RALPH | ) | |
| GONZALEZ, GENE LAMB, JOSEPH KINDLON | ) | |
| JOHN SIMON, J. GERARD PECK and WILLIAM | ) | |
| JACKSON, Members of the Illinois Racing Board, | ) | Honorable Anthony Young, |
| in Their Individual and Official Capacities; JACK | ) | Judge Presiding. |
| KUBIK, Executive Director of the Illinois Racing | ) | |
| Board; ROBERT MILBURN and BRAD DYE, | ) | |
| State Stewards; and BEN WESSELS, Association | ) | |
| Steward, in Their Individual and Official Capacities, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE MURPHY delivered the opinion of the court:

On December 20, 1999, defendant Illinois Racing Board (Board) suspended and excluded plaintiff, James Ellison, a horse owner, trainer and rider, from all racetracks under the supervision of the Board and revoked his licenses. The three-year suspension was dated to an incident of July 13, 1999. Plaintiff filed a complaint in administrative review pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2004)), claiming that the Board's decision was arbitrary and capricious and against the manifest weight of the evidence. Plaintiff also asserted that his constitutional rights were violated by the Board and that section 9(e) of the

1-05-3835

Illinois Horse Racing Act of 1975 (Act) (230 ILCS 5/9(e) (West 2004)) and the Board's rules were unconstitutionally vague. The circuit court affirmed the Board's ruling. For the following reasons, we affirm the Board's decision.

## I. BACKGROUND

On July 13, 1999, following an incident at plaintiff's tack room and Barn 14 at Balmoral Park Racetrack (Balmoral), a hearing was held by state and Balmoral race stewards. Plaintiff was sworn and presented his story to the stewards. In addition, investigator Michael Delaney, security guard Greg Kash, and plaintiff's employee Juan Orantes also testified to the incidents of that day. Following the hearing, the stewards issued a ruling, without further facts or findings, that, pursuant to section 9(e) of the Act, plaintiff was excluded from all racetracks and wagering locations under the Board's jurisdiction. Plaintiff filed an appeal with the Board regarding the stewards' ruling. Plaintiff was denied a stay of the stewards' order, but was subsequently granted a temporary restraining order by the trial court staying that ruling during the pendency of the administrative process.

The Board held a hearing in November 1999 and called plaintiff to testify as the first of its eight witnesses. Plaintiff testified that at around noon on July 13, 1999, he was with a horse that was being treated by veterinarian Dr. Paul McCune. Delaney, an investigator hired by Balmoral, and security officer Kash, entered Barn 14 and plaintiff accompanied them to his tack room. Plaintiff testified that Delaney began inspecting the room and sorting through files. Since Delaney was taking items out of the file cabinet quickly, plaintiff moved items on his couch out of the way, including a shoe box containing an empty isopropyl alcohol bottle.

Plaintiff testified that he was holding that shoe box when McCune appeared at the door

and stated that there was a problem with the horse "Beach Bound Britt." Still holding the box, plaintiff immediately left the tack room, running past McCune as he left to check on the horse. Plaintiff stated that he stopped for one or two seconds and saw the horse's leg was extended in the air in distress. Plaintiff testified that, though he just passed McCune, he next ran toward McCune's truck to find him, throwing the shoe box in the trash on the way. Plaintiff denied seeing his employee Juan Orantes or having a plastic bag of items at this time.

Delaney testified next to his experience as an investigator and his investigation of July 13, 1999, to look into allegations of illegal drugging against plaintiff. Delaney and Kash arrived at Barn 14 at around noon on July 13, 1999, to inspect "Fox Valley Admiral," a horse trained by plaintiff. After inspecting the horse, Delaney asked plaintiff if they could inspect his tack room, informing plaintiff that he could refuse. Plaintiff consented and led them to his tack room. Delaney stated that the office was disorganized and cluttered. After looking through a refrigerator and after a couple minutes of looking through files, Dr. McCune appeared and informed plaintiff that a lame horse was doing poorly.

Delaney testified that plaintiff then grabbed a "K-Swiss" shoe box with a white plastic bottle visibly protruding and ran out of the tack room. Delaney and Kash yelled at him to stop but plaintiff continued on, and the two started to chase plaintiff. Delaney saw plaintiff pause for less than two seconds by the lame horse and continue to run with the shoe box. Delaney then saw Orantes and told Kash to continue pursuing plaintiff while he pursued Orantes.

Delaney eventually found Orantes walking "semi-crouched" toward an exit. Delaney testified that he saw Orantes trying to conceal something while he retreated. When he achieved a better view of Orantes, Delaney saw that Orantes was carrying a plastic grocery bag. Orantes

ducked behind a horse trailer and emerged without the bag. Delaney told Orantes to stop and grabbed him when he failed to respond. Delaney testified that he led Orantes to the back of the trailer and he found a tan plastic grocery bag containing needles, syringes and bottles of pharmaceuticals. Delaney admitted that the first time he saw the grocery bag, it was in Orantes' hands and that he lost sight of the bag when Orantes was out of sight.

Delaney testified that he next met with Kash, Orantes, plaintiff and Dr. McCune. Delaney asked plaintiff about the contents of the bag without showing anyone the bag. Plaintiff responded that it was McCune's vet trash that he had collected to throw away. Delaney testified that he asked plaintiff why he had run away with a shoe box and refused to stop when requested. Plaintiff answered that he had to check on his horse and that he was just throwing away the box of garbage. Plaintiff led Delaney to the trash can where he discarded the shoe box. Plaintiff denied that the shoe box ever contained the grocery bag recovered from Orantes.

When questioned by Delaney about the grocery bag, McCune stated that the items were similar to what he uses in his practice but that they were not his. Delaney stated that plaintiff appeared agitated during this questioning. In addition, Delaney testified that plaintiff attempted to grab the grocery bag several times while McCune was being questioned. Delaney then secured plaintiff's tack room with a new lock and instructed plaintiff and Orantes to return later that day for an interview.

Following the hearing before the race stewards, Delaney testified that he, Kash and Daniel Martinez, director of security for the Board, searched plaintiff's office. Several bottles and jars containing liquids, tablets or powder were identified. In addition, numerous syringes were found. These items were inventoried by Delaney and Martinez and they were forwarded to

the Board's laboratory for analysis.

Kash also testified to this course of events. Kash testified consistently with Delaney's recitation, also testifying that plaintiff was advised he had a right to refuse their search of his office and that plaintiff consented. Martinez testified that he had worked for 20 years with the Board and that he had conducted investigations regarding contraband. Martinez assisted Delaney in inventorying, sealing and sending the confiscated items to the laboratory.

Robert Milburn and Bradley Dye, state race stewards for the Board, and Ben Wessels, race steward for Balmoral, testified to the hearing and the exclusion order entered against plaintiff. The stewards testified that they determined from the testimony of Delaney, Kash, Orantes and plaintiff that plaintiff's actions called into question the honesty and integrity of horse racing and were contrary to the best interests of the sport, warranting exclusion under section 9(e) of the Act. In support of their finding, the stewards cited Orantes' possession of contraband, plaintiff's fleeing and failure to stop when directed by security personnel, and plaintiff's failure to cooperate in the investigation. The stewards found that plaintiff was responsible for Orantes' actions under the Board rules.

Shelley Kalita, director of the Board's laboratory, testified to the identification of the substances confiscated from plaintiff's office. Kalita testified that she received a sealed box obtained from the investigation of plaintiff containing 85 items, including medications, prescription bottles, injectables, syringes and needles that were to be tested. The tests administered identified the substances to be various prescription medicines, including antiinflammatory steroids and bronchodialators.

Plaintiff was recalled to testify on his own behalf. Plaintiff testified that neither Delaney

nor Kash admonished him of his right to deny their inspection of his office. Plaintiff repeated that he left the office in a hurry because his horse was ailing and he just happened to be holding the shoe box containing trash. Plaintiff claimed that he did not know where McCune was when he ran to look at the horse and that he did not hear anyone yell at him to stop. Plaintiff confirmed that the seized items on Kalita's list were in his possession at the time of the investigation. Plaintiff stated that he received the medicines from veterinarians, doctors, pharmacies and stores, though he did not produce any prescriptions for the medicines.

McCune testified that he followed plaintiff, Delaney and Kash toward the injured horse after plaintiff ran off. McCune next saw plaintiff standing by the horse. McCune disputed plaintiff's allegation that the items in the plastic grocery bag were his, stating that he always cleaned up after treating an animal.

On December 14, 1999, the Board held a public meeting at which plaintiff's appeal was considered. The Board indicated that each member had carefully reviewed the transcript of the proceedings of the hearing, exhibits, and the arguments of counsel. Commisioner J. Gerard Peck recited an overview of the evidence from the hearing. Peck opined that the record supported plaintiff's exclusion for violation of several Board rules and otherwise calling into questioning the honesty and integrity of the sport.

Specifically, Peck stated that plaintiff violated the trainer responsibility rule by permitting Orantes to possess and hide the contraband and the rules prohibiting possession of needles, syringes, injectables and prescription items by anyone other than a veterinarian. Peck also noted plaintiff's general behavior in fleeing the investigators. Although no evidence conclusively showed that plaintiff physically possessed the bag of contraband, the Board found that plaintiff's

knowledge of the bag's contents and the fact his employee possessed the bag were sufficient to find the Board's rules were violated. Furthermore, Peck opined that plaintiff's testimony lacked credibility based on his evasive, unresponsive and unbelievable testimony, particularly in failing to provide a reasonable explanation for his flight from the investigators. Peck specifically found the testimony of the Board's witnesses was more credible and persuasive.

Following Peck's discussion of the facts and his opinion, the Board unanimously approved his motion to suspend and exclude plaintiff for three years. On December 20, 1999, the Board issued its final administrative decision in a written order detailing its findings of fact and credibility determinations noted above. The Board found that plaintiff violated Rules 603.50, 603.80 and 603.90 (11 Ill. Adm. Code §§603.50, 603.80, 603.90 (1998)) and section 9(e) of the Act. Plaintiff filed a complaint in administrative review in the circuit court of Cook County. On October 21, 2005, the trial court entered an order affirming the Board's decision. This appeal followed. We note that plaintiff has not filed a reply brief or sought leave to file a supplementary brief or to supplement the record. Under Supreme Rule 341(j), a reply brief is not required, and we proceed without benefit of a response argument from plaintiff. 210 Ill. 2d R. 341(j).

## II. ANALYSIS

### A. Jurisdiction

First, plaintiff argues that the Board's December 20, 1999, order is void because the Board lacked jurisdiction over this matter; it failed to discuss the matter in an open meeting; and the hearing officer failed to provide a report to the Board. However, the State properly argues against these assertions. First, plaintiff misread Board Rule 204.10 in coming to his conclusion on jurisdiction. Contrary to plaintiff's assertion, Rule 204.10(a)(3) does not require the Board to

enter an order to show cause in order to hear a matter. 11 Ill. Adm. Code §204.10(a)(3) (1998). Rather, the rule simply states the rules of that section apply to the Board's review of race steward orders, to the Board's hearings on the ejection or expulsion of licensees, and in the Board's enforcement proceedings, "including, but not limited to, proceedings instituted by orders to show cause." 11 Ill. Adm. Code §204.10(a)(3) (1998). The language cited by plaintiff in no way limits the jurisdiction of the Board and this argument fails.

As to plaintiff's claim that the Board violated the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2004)), his conclusory argument is not enough to support this assertion. Plaintiff argues that it is "apparent that the Board's consideration of this matter occurred 'behind closed doors' in violation of Ellison's due process rights and in derogation of the Open Meetings Act." The Board held a meeting open to the public. Commissioner Peck presented his overview and understanding of the facts to the quorum of six Board members. It is obvious from the transcript that Peck and the other Board members familiarized themselves with the evidence from the hearing before the meeting and made an informed decision. In no way does the record indicate that the Board conspired behind close doors.

Finally, plaintiff's argument that the Board's order is void for failure of the hearing officer to provide a report also fails. Section 14(a) of the Act indeed requires a hearing officer to "make report thereof" to the Board of testimony and physical evidence. 230 ILCS 5/14a (West 2004). This simply requires the hearing officer to compile the evidence presented at a hearing and submit it to the Board. The final sentence of section 14a, not quoted by plaintiff, allows the Board to make its final administrative decision based on "reports presented to it and investigations and hearings conducted by hearing officers." 230 ILCS 5/14a (West 2004).

The law is clear in Illinois that the decision of a board is the final agency decision that may be reviewed by the courts. *Homefinders, Inc. v. City of Evanston*, 65 Ill. 2d 115, 128 (1976). The cases cited by plaintiff do not support his blanket proposition that the failure of a hearing officer to issue a report of findings renders the final administrative decision void. Rather, they merely support the limited rule that, if the evidence in an administrative hearing is so closely balanced that the credibility of a witness is determinative to the final outcome, a hearing officer's findings on credibility may be necessary. See *Ruther v. Hillard*, 306 Ill. App. 3d 997, 1005 (1999); *Starnawski v. License Appeal Comm'n*, 101 Ill. App. 3d 1050 (1981). That is not the case here and the Board's decision is not void for failure of the hearing officer to offer his own conclusion and impression of plaintiff's credibility.

## B. The Manifest Weight of the Evidence

Plaintiff asserts the findings of the Board were against the manifest weight of the evidence. In an action under the Administrative Review Law, factual determinations by an administrative agency are held to be *prima facie* true and correct and will stand unless contrary to the manifest weight of the evidence. 735 ILCS 5/3-110 (West 2004); *Amigo's Inn, Inc. v. License Appeal Comm'n*, 354 Ill. App. 3d 959, 964 (2004). To find a determination against the manifest weight of the evidence requires a finding that all reasonable people would find that the opposite conclusion is clearly apparent. *North Avenue Properties, L.L.C. v. Zoning Board of Appeals*, 312 Ill. App. 3d 182, 184 (2000).

We review the decision of the Board, not the circuit court, as the hearing officer is the fact finder responsible for overseeing testimony, making credibility determinations and assigning weight to statements made by witnesses. *Ahmad v. Board of Education of the City of Chicago*,

365 Ill. App. 3d 155, 162 (2006). In making this determination, we do not weigh the evidence or substitute our judgment for that of the administrative agency. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). Simply put, if there is evidence of record that supports the agency's determination, it must be affirmed. *Abrahamson*, 153 Ill. 2d at 88. However, if the agency relies on factors that the statute does not intend, fails to consider an issue, or the decision is so implausible, the decision may be reversed as arbitrary and capricious. *Sanchez v. Ryan*, 315 Ill. App. 3d 1079, 1086 (2000).

Under the Act, the Board is vested with jurisdiction and oversight of licensing over all licensees in horse racing in the state and empowered to promulgate reasonable rules and regulations to enforce the Act. 230 ILCS 5/9(a), (b) (West 2004). In carrying out this oversight responsibility, the Board and its agents are empowered to investigate its licensees and enter their facilities and places of business to determine compliance with the Act and the Board's rules and regulations. 230 ILCS 5/9(c), (d) (West 2004). Section 9(e) of the Act allows the Board to exclude any person who calls into question the honesty or integrity of horse racing or interferes with the orderly conduct of horse racing. 230 ILCS 5/9(e) (West 2004). The Board must have just cause to exclude such a person and may also revoke or suspend a license for violation of the rules and regulations or the Act, the matter being subject to subsequent hearing. 230 ILCS 5/15(d), 16(b) (West 2004). Such a hearing is, by rule, conducted *de novo*. 11 Ill. Adm. Code §204.85(a), added at 26 Ill. Reg. 10806, eff. July 1, 2002.

As noted above, the Board found plaintiff violated Rules 603.50, 603.80 and 603.90. Rule 603.50 is known as the trainer responsibility rule as it places individual responsibility on the trainer to guard each horse he or she trains and prevent any attempts to administer foreign

substances to the horse. 11 Ill. Adm. Code §603.50 (1998). The possession of needles, syringes and injectables is limited to licensed veterinarians by Rule 603.80. 11 Ill. Adm. Code §603.80 (1998). Rule 603.90 requires anyone other than a licensed veterinarian to have a valid prescription to possess any prescribed medicine. 11 Ill. Adm. Code §603.90 (1998).

Plaintiff argues that the decision was against the manifest weight of the evidence and arbitrary and capricious. Plaintiff asserts that, "without question," the resolution of the issues before the Board rested on the credibility of the witnesses. While the Board determined that plaintiff lacked credibility, plaintiff asserts that the hearing officer did not make any such report and the Board failed to explain that finding. Plaintiff cites to a recent Rule 23 (166 Ill. 2d R. 23) order of this court where the credibility of witnesses was determinative and the Board was reversed for making credibility determinations without any such conclusions from the hearing officer. *Little v. Illinois Racing Board*, Nos. 1-04-0144, 1-04-0254 (2005) (unpublished order under Supreme Court Rule 23). Furthermore, plaintiff argues that both Kash and Delaney presented inconsistent testimony that plaintiff's horse had a free brand when it had a lip tattoo, but that was not cited by the Board.

Plaintiff asserts that nothing above circumstantial evidence was presented to support a finding that plaintiff violated any rule. Plaintiff argues that what the Board termed "reasonable inferences" are "only assumptions and unreasonable conclusions." In his argument, plaintiff claims that Delaney, a "hired-gun," and Kash, Delaney's "sidekick," targeted plaintiff and concocted a "weak case of assumptions, speculation and conjecture" that was "smoke and mirrors," which the Board bought into when it affirmed the exclusion penalty. Plaintiff argues that since no evidence proved his actual possession of the contraband, the Board's finding is

against the manifest weight of the evidence.

Plaintiff asserts that the lack of any chain of custody for the confiscated items made that evidence inadmissible. Plaintiff argues that Delaney and Kash had completed their search of his tack room during their initial search and only identified contraband items upon their return search later in the day. Plaintiff offers that no other trainers located in that barn were interviewed or searched and that his tack room remained open. Therefore, plaintiff argues that the evidence produced at the hearing did not meet evidentiary requirements and lacked reliability.

While it is true that the Board's credibility determination does not merit as much weight as if it were by the hearing officer who oversaw testimony, we agree with defendant that the credibility finding was not determinative and the record supports the Board's final decision. The record supports the Board's findings that plaintiff's explanations for his actions did not make sense, especially given the corroborating testimony of the other witnesses. The Board made reasonable inferences from the evidence presented which we may not disregard unless they are unreasonable. *Burrgess v. Industrial Comm'n*, 169 Ill. App. 3d 670, 676 (1988).

The evidence presented at the hearing clearly allowed the inference that Orantes had the grocery bag filled with contraband. While the inference that plaintiff gave Orantes the bag while he was fleeing is not as clear, plaintiff did flee with a shoe box filled with something and both he and Orantes disposed of items while actively avoiding the investigators. Defendant also correctly notes that plaintiff is responsible for Orantes' actions as a trainer. In any event, there was no evidence presented to find that the Board's decision was against the manifest weight of the evidence. This evidence supports the findings that plaintiff did not adequately protect his horses

and that he and his employee possessed needles, syringes and injectables in violation of Rules 603.50 and 603.80.

Furthermore, the evidence supports the Board's finding that plaintiff possessed prescription medicine without a valid prescription in violation of Rule 630.90. Plaintiff's arguments fall flat in many ways. First, the parties neglected to note the fact that administrative agencies are not bound by the strict rules of evidence that apply in a judicial proceeding and the admission of evidence in such a hearing is purely discretionary. *MJ Ontario, Inc. v. Daley*, 371 Ill. App. 3d 140, 149 (2007). Failure to strictly observe the technical rules of evidence is not sufficient reason to set aside an agency's decision unless it materially affects the rights of a party and results in substantial prejudice. *Giampa v. Illinois Civil Service Comm'n*, 89 Ill. App. 3d 606, 612 (1980). While a proper chain of custody was not presented in support of the prescription medicines identified in plaintiff's tack room, there was no evidence that the failure to follow the technical rules of evidence materially affected plaintiff's rights. Plaintiff's claim that Delaney had completed the investigation of the tack room before he fled the office and only found items when they searched for a second time outside of plaintiff's presence is entirely baseless.

More importantly, when presented with the list of items tested by Kalita, plaintiff himself confirmed the items were in his possession at the time of the investigation. Plaintiff did not present any valid prescriptions for the prescribed medicines found in his tack room. The Board's finding that plaintiff violated Rule 630.90 was not against the manifest weight of the evidence.

These violations, combined with plaintiff's startlingly odd and suspicious behavior

toward Delaney and Kash, supported the Board's finding that plaintiff violated section 9(e) of the Act. Fleeing through the barn, ignoring repeated calls to stop, discarding items, continuing suspicious behavior when stopped, telling his inconsistent stories, and attempting to cover up the issue all support the finding that plaintiff's actions undermined public confidence and the reputation of horse racing.

### C.  Penalties Assessed

We next address whether the penalties assessed by the Board were improper. As addressed above, the Board is charged with maintaining the integrity of horse racing in Illinois. In support of those duties, where the Board finds just cause, it may exclude and suspend its licensees. However, plaintiff notes that it is well established that a reviewing court may overturn sanctions imposed by the Board if they are overly harsh. *Feliciano v. Illinois Racing Board*, 110 Ill. App. 3d 997, 1005 (1982). *Feliciano* also held that the Board may impose punishment as harsh as a lifetime suspension and a reviewing court will only overturn a penalty that is arbitrary, unreasonable and contrary to the goals of the Board. *Feliciano*, 110 Ill. App. 3d at 1005-06.

Based on plaintiff's analysis of the manifest weight of the evidence above, and his due process claims outlined both above and below, plaintiff claims there was no support for the three-year exclusion and suspension that he received. Plaintiff also argues that the race stewards and the Board failed to take into account the mitigating factors that the Board's rules contemplate when handing down penalties. In particular plaintiff cites six mitigating factors under Rule 603.160 (11 Ill. Adm. Code §603.160 (1997), that he claims were not considered: (1) plaintiff's 20-year career in horse racing with a "nearly unblemished" record; (2) the number of horses

under plaintiff's care; (3) the lack of any foreign substance found in plaintiff's horses; (4) none of the confiscated items were illegal; (5) plaintiff was never seen in possession of, or using, the needles, syringes or injectables; and (6) there was no evidence plaintiff's actions were intended to affect the outcome of a race.

We agree with defendant that plaintiff's argument is unconvincing. Plaintiff's vast experience in horse racing argues for a stiff penalty, not for a reduction. A trainer, owner and rider with 20 years of experience should know better than to possess prescription medicine without valid prescriptions, and that fleeing from investigators would not promote a positive image of horse racing. Rather than taking steps to avoid violations, like the mitigating factor in Rule 603.160 contemplates, plaintiff actively attempted to conceal his violations and made a public spectacle in the process. Though not illegal, the items plaintiff had were in violation of Board rules and regulations. The Board is authorized to determine a proper punishment and its actions in imposing a three-year exclusion and suspension in this case were not arbitrary, unreasonable or contrary to its goal of protecting the honesty and integrity of horse racing.

D. Constitutional Violation Claims

Finally, plaintiff argues that his due process rights were violated by the Board's lack of proper notice and that section 9(e) of the Act is unconstitutionally vague. Plaintiff first asserts that notions of due process were violated because he was not provided sufficient notice of the charges against him. Plaintiff notes that the race stewards' exclusion order only cited section 9(e) of the Act as the basis for his punishment and the Board continued to fail to properly apprise him of the claims against him of the rules violations.

For administrative hearings, due process of law specifically requires a definite charge, adequate notice and a full and impartial hearing. *Giampa*, 89 Ill. App. 3d at 610. Although the charges in an administrative proceeding do not need to be as precisely worded as the pleadings in a judicial proceeding, the respondent must be adequately advised of the charges so that he may intelligently prepare a defense. *Giampa*, 89 Ill. App. 3d at 610-11. In *Giampa*, the respondent faced a charge from the Illinois Civil Service Commission (Commission) related to sexual crimes against a minor. Before the administrative hearing, the hearing officer granted a motion for a second charge, made three days before the hearing, of conduct unbecoming a state employee. *Giampa*, 89 Ill. App. 3d at 609. This court rejected the respondent's due process claim because the second charge was based on the facts of the first incident and the respondent made no showing that he was unable to intelligently prepare his defense due to the lack of notice. *Giampa*, 89 Ill. App. 3d at 611.

Defendant admits that the race stewards did not specifically identify the Rules that plaintiff violated. However, defendant argues that counsel for plaintiff made clear at the outset of the hearing that plaintiff knew he was defending claims that he violated Rules 603.50 and 603.80, but no mention of Rule 603.90 was made. Defendant also argues that plaintiff was provided with all evidence, including Kalita's itemization and test results of items confiscated from plaintiff's tack room.

We agree that the facts underlying all rules violations by plaintiff were clear from the proceedings before the race stewards and they based their finding that plaintiff violated section 9(e) of the Act. Like in *Giampa*, plaintiff was therefore advised of the evidence he would have to

defend against. More importantly, also like in *Giampa*, plaintiff has not provided any evidence that he was unable to intelligently prepare his defense. Therefore, plaintiff's contention that he did not receive adequate notice to protect his due process rights is rejected.

Defendant asserts that plaintiff waived his argument that section 9(e) is unconstitutionally vague because he did not raise the issue before the Board. While it is generally required to raise such an issue before the agency and circuit court to preserve it for review before this court, waiver is an admonition on the parties and this court may consider the issue. *Dombrowski v. City of Chicago*, 363 Ill. App. 3d 420, 425 (2005). While plaintiff did not raise this issue before the Board, it was raised before the trial court, which rejected the argument and we quickly address this issue.

We agree with defendant that plaintiff's argument on this issue is lacking. Plaintiff has provided a string cite of various cases that provide different analyses and holdings in due process cases. However, plaintiff does not provide any analysis of these cases himself, nor does he apply them to the facts of his case. Plaintiff does provide the conclusory arguments that the language of the Act is ambiguous and leaves the decision whether or not to exclude a licensee to the whims of the Board with absolute discretion to act.

First, less precise statutory language is required when penalties are civil rather than criminal. *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 443 (1998). Vagueness challenges that do not invoke first amendment freedoms are not reviewed on their face, but rathe, on the facts of the case at issue. *Russell*, 183 Ill. 2d at 442. The facts of this case show that the Board considered plaintiff's violations of its rules in addition to his questionable behavior trying

to avoid enforcement of those rules.

The trial court rested on our supreme court's extensive discussion of the constitutionality of section 9(e) of the Act in *Phillips v. Graham*, 86 Ill. 2d 274 (1981). The *Phillips* court did not squarely consider plaintiff's vagueness argument; however, it did conclude that the Act did not violate due process. While *Phillips* does not outright resolve plaintiff's vagueness claim, it is helpful in analyzing the issue. Specifically, the *Phillips* court found that the Act was not an unconstitutional delegation of legislative power and that the "just cause" provision in section 9(e) was a reasonable provision under the legislature's police power. *Phillips*, 86 Ill. 2d at 288. This holding is helpful because the delegation issue is necessarily intertwined with the vagueness question because it too deals with sufficient intelligible standards to guide the agency involved. *South 51 Development Corp. v. Vega*, 335 Ill. App. 3d 542, 555 (2002).

Furthermore, the Act empowers the Board to promulgate rules and regulations to safeguard the sport of horse racing, that are also important in considering a vagueness claim. *Russell*, 183 Ill. 2d at 442. These regulations clearly put plaintiff on notice that he could face exclusion for his behavior. Further, Rule 603.50(b) charges licensees with the responsibility to be familiar with the medication rules of the Board. 11 Ill. Adm. Code §603.50(b) (1998). The record indicates that the race stewards and the Board considered the violations of the rules in combination with plaintiff's suspicious behavior in handing down its punishment. Finally, the Act and the rules provide an appeals process to the Board and the circuit court, which plaintiff has utilized and defendant has shown it did not act improperly and the Act is not unconstitutionally vague as applied to plaintiff.

### III. CONCLUSION

For the aforementioned reasons, the decision of the Board is affirmed.

Affirmed.

NEVILLE, P.J., and CAMPBELL, J., concur.