# Illinois Official Reports

## Appellate Court

*Moore v. Board of Education of the City of Chicago*, 2016 IL App (1st) 133148

| | |
|---|---|
| Appellate Court Caption | LISA MOORE, Petitioner-Appellee, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO; DAVID J. VITALE, President; JESSE RUIZ, Vice President; CARLOS M. AZCOITIA, HENRY S. BIENEN, MAHALIA HINES, DEBORAH H. QUAZZO, and ANDREA ZOPP, Board Members; and BARBARA BYRD-BENNETT, Chief Executive Officer, Respondents-Appellants (Robert Perkovich, Hearing Officer, and the Illinois State Board of Education, Respondents). |
| District & No. | First District, Second Division<br>Docket No. 1-13-3148 |
| Filed | June 21, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-16789; the Hon. Leroy K. Martin, Jr., Judge, presiding. |
| Judgment | Affirmed and remanded with directions. |
| Counsel on Appeal | James L. Bebley and Lee Ann Lowder, both of Board of Education of the City of Chicago Law Department, of Chicago, for appellants.<br><br>Jerome F. Marconi, of Chicago, for appellee. |

PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justices Neville and Simon concurred in the judgment and opinion.


**OPINION**

¶ 1    Following an administrative hearing, petitioner Lisa Moore, a tenured teacher for Chicago Public Schools (CPS), was dismissed from her employment by the Board of Education of the City of Chicago (Board) for allowing her Illinois teaching certificate to lapse and failing to promptly reinstate it. Moore then sought administrative review in the circuit court of Cook County, which reversed the Board's decision and remanded the matter to the Board to calculate damages. The Board then filed a motion to reconsider which the circuit court denied. The Board now appeals and argues that the decision to discharge Moore for failing to maintain a valid teaching certificate for almost eight years was proper and the misrepresentations Moore made regarding her certification were immoral and possibly criminal and were further irremediable cause for her discharge. For the following reasons, we affirm the circuit court, which reversed the Board's decision, and remand the matter to the Board to calculate damages.

¶ 2                                    BACKGROUND

¶ 3    On March 16, 2011, Moore was charged by the CPS chief executive officer with violating certain Board rules and the School Code (School Code or Code) (105 ILCS 5/21-1 (West 2010))[1] for teaching in a public school without a valid Illinois teaching certificate. Board rule 4-4(d) provides that an employee whose certificate lapses "shall be subject to discipline or dismissal in accordance with the Board's Employee discipline and Due Process Policy."

¶ 4    The following evidence was adduced at a December 13, 2011, administrative hearing on the charges. Lisa Moore obtained her initial secondary (high school) teaching certificate in 2000 and began working for the Board that year. In 2002, Moore was assigned to teach English at the Chicago Military Academy, a Chicago public school. At all relevant times, Moore maintained a full teaching workload through the completion of the 2010-11 school year. She has no history of disciplinary action and her most recent performance evaluation was rated "excellent."

¶ 5    In 2010, during an audit, the Board determined that Moore and "hundreds" of other teachers did not have valid teaching certificates. In Moore's case, she had not renewed her initial teaching certificate, which was only valid for four years and expired in 2004. Moore testified that prior to April 2010 no one from CPS or the Board had contacted her about her certificate. She first realized her teaching certificate had expired when she was so informed by CPS in April 2010. After receiving this notice, she contacted CPS about correcting the problem and the Illinois State Board of Education (ISBE) to inquire about renewing her certificate.

¶ 6    As a result of her lapsed teaching certificate, Moore was called for three "investigatory" meetings with the Board's department of labor and employee relations beginning in April

---

[1]The version of section 5/21-2 referenced herein was effective from August 13, 2009, to August 25, 2011. 105 ILCS 5/21-2 (West 2010).

2010. She did not personally appear at the first meeting because she was teaching that day. She participated in the second meeting by phone. On April 27, 2010, the Board sent a letter to Moore explaining that her "elementary school teaching certificate had expired on June 30, 2004," and that the matter had been referred to the Board's law department for further proceedings. She didn't think much of it because it referenced an "elementary school certificate" which she did not have, so she presumed it was a different matter entirely.

¶ 7    On June 30, 2010, she applied for a one-year reinstatement of her initial certificate, but her application was returned by the ISBE. Moore inquired with the ISBE and was informed over the phone that her application was returned because she needed to pay a fee and complete five semester hours of coursework before her certificate could be reinstated. She understood this to mean that she could not reapply until she had completed the five semester hours of coursework. The Board assigned Moore to teach for the 2010-11 school year and sometime during the fall of 2010 the Board conducted another certificate audit. In November 2010, the Board again notified Moore that her certificate had expired and was not current.

¶ 8    Moore completed five semester hours of required coursework during the 2010-11 school year. In January 2011, the director of CPS department of labor and employee relations sent Moore a letter informing her that, because she did not have a valid teaching certificate, the matter was being referred to the Board's law department. On March 16, 2011, formal charges for violating certain Board rules and the School Code for teaching in a public school without a valid Illinois teaching certificate were filed.

¶ 9    Once the required coursework was completed, Moore applied to reinstate her certificate on March 31, 2011. That application was again returned because the reinstatement fee had been increased and she needed to submit an additional fee. She resubmitted the application and correct fee on April 27, 2011, and requested the expedited issuance of her certificate. The ISBE reinstated her initial certificate on April 27, 2011, and issued her a standard secondary teaching certificate on May 5, 2011, prior to the December 13, 2011, administrative hearing.

¶ 10    After reviewing her initial teaching certificate she acknowledged that, on its face, the certificate states that it was valid for four years. She acknowledged that she was aware that a teaching certificate would expire at some point and need to be renewed.

¶ 11    Richard Miller, principal of the Chicago Military Academy, testified that he spoke with Moore in the spring of 2010 about her lapsed certificate. Moore explained to him that she had already contacted ISBE to resolve the issue. After Moore failed to attend the April 6, 2010, disciplinary meeting, Miller called her into his office where Moore told Miller that she had a waiver from the ISBE and the matter was resolved. He received a copy of the April 27, 2010, letter from CPS informing Moore that her "elementary" certificate had lapsed. This did not cause Miller any concern because he presumed that this notice involved a separate elementary teaching certificate. Sometime during the 2010-11 school year, after receiving notice that Moore's initial teaching certificate had not been reinstated, Miller approached Moore about the matter. Moore told him that this was a "horrible mistake" and "she would get it corrected immediately."

¶ 12    Jeffrey Aranowski, supervisor of ISBE's division of educator and school development, testified that a qualified individual is granted an initial teaching certificate for four years, provided that registration fees are paid for that term. On its face, an initial teaching certificate states that it is valid for four years. At the end of that term, if the individual has four years of teaching experience and has completed the requisite professional development coursework, he

or she may apply for and obtain a standard teaching certificate. Aronowski reviewed Moore's file and found that between 2000 and 2010, Moore did not file any request with the ISBE to renew her certificate. The initial certificate was issued on March 21, 2000, and registration fees were paid through June 30, 2003. When Moore first sought reinstatement of her certificate in June 2010, a teacher who had not registered her certificate for the previous five years could receive a reinstatement for the remainder of the fiscal year if an application was made and all back registration fees were paid. In order "[t]o renew beyond the reinstatement year, the individual would have to complete five semester hours of college course work."

¶ 13 According to Moore's ISBE file, she applied for a one-year reinstatement on June 30, 2010. The ISBE returned Moore's application to her on July 16, 2010, explaining that the "[s]tatement of [a]ssurance" had been returned and "because her certificate had lapsed, she was required to pay a $40 fee to reinstate it." Aronowski explained that the statement of assurance is a "listing of professional development completed by the applicant in order to renew his or her teaching certificate." In March 2011, Moore again applied for a one-year reinstatement. The ISBE returned that application requesting that she resubmit with a $45 payment because the fee had been increased since she last applied. Later in April, she reapplied and "as of April 28th [she] had a reinstated valid initial secondary teaching certificate and then beginning on May 5th, 2011 [she had] a valid secondary teaching certificate." Lastly, Aronowski testified that it is "unlawful to have an unregistered certificate and be assigned to a public school classroom."

¶ 14 Tomas Krieger, assistant director for the Board's department of labor and employee relations, testified that he counsels principals and administrators about Board rules, CPS policies, and various laws related to employment issues. He is responsible for reviewing and approving the department's discipline and termination cases. Board rule 4-4(d) provides that if an employee's teaching certificate lapses or is otherwise invalid, then the employee is subject to discipline or dismissal. According to the Board's "Employee Discipline and Due Process Policy," disciplinary options for such misconduct are dismissal or referral for criminal prosecution. In Krieger's opinion, it is important for the Board's teachers to have valid certificates because it is required by law and because certificate renewal procedures require teachers to meet the requisite professional criteria and take the required development classes.

¶ 15 In 2010, Krieger was involved in the Board's teaching certificate audit where the Board discovered that "hundreds" of employees did not have valid teaching certificates. The department scheduled disciplinary hearings with these employees to ascertain if the audit was correct. Some employees did not face disciplinary action because their jobs did not require teaching certificates. If a teacher had an invalid certificate but renewed it prior to the disciplinary meeting, the department imposed discipline based on how long the certificate had been invalid, but did not dismiss those teachers. Such discipline ranged from a written reprimand to a 30-day suspension. Conversely, if a teacher failed to reinstate the certificate by the time of the conference, the matter was referred to the Board's law department for discipline greater than a 30-day suspension. Although, Krieger did recall that some teachers had lapsed certificates for two or three years and possibly even four, five or six years, he did not encounter any cases where a teacher had a lapsed certificate for seven or eight years. However, as long as the teacher appeared at the investigatory conference with a reinstated certificate, the teacher was not fired.

¶ 16    After Moore failed to attend the April 2010 investigatory conferences, the department referred the matter to the Board's legal department for further action. The reference to an "elementary certificate" in that referral notice was a typo, but the notice still conveyed that she was teaching with a lapsed certificate. In November 2010, the Board conducted another audit and found that Moore still did not have a valid certificate. Moore attended the November 23, 2010, conference with her union representative. It was determined that Moore had not rectified the problem, and in January 2011, the matter was referred to the Board's legal department for further proceedings. The dismissal charges were issued thereafter.

¶ 17    At the conclusion of the hearing, the hearing officer prepared written findings of fact and recommendation wherein he explained that neither petitioner's nor respondent's arguments were "particularly helpful" and were either based on outdated law or, in the Board's case, stated "nothing more than an assertion." He summarized the Board's contention that Moore "should be dismissed because her conduct was irremediable *per se* and thus there was no need for [the Board] to prove that her misconduct caused damage and could have been remediated if she had been warned." Therefore, the dispute turned on "whether or not [Moore's] misconduct was irremediable *per se*" because the record was clear that the Board "did not warn [Moore] and give her an opportunity to remediate." He reasoned that it was "clear" that her "failure to maintain her teaching certificate is neither cruel, immoral nor criminal." Because the record was devoid of any evidence that her actions "brought psychological or physical harm to a student, *** [he was] left then with only one category *** cited as an example of irremediable *per se* misconduct, that of negligence." The hearing officer concluded that "negligence" has been "defined in the law as conduct that is careless, inattentive and/or an omission of proper care or forethought," and, therefore, Moore's conduct was "irremediable *per se* in that she failed to maintain her certificate and in doing so was careless, inattentive and failure to exercise proper care." Moreover, her conduct also "violated state civil law." He based this conclusion on her admission that the certificate was only valid until 2004, she knowingly failed to maintain it, and she did not act promptly "or in an otherwise careful and attentive fashion" after learning of her failure to maintain her certificate. Lastly, the hearing officer found that because Moore's conduct was negligent, "a form of irremediable *per se* misconduct that *** requires no attempt at remediation, I must also find that [Moore] was grossly negligent." On this basis, he recommended Moore's dismissal. Thereafter, the Board adopted the hearing officer's findings of fact and his recommendation and terminated Moore's employment.

¶ 18    Moore sought administrative review of her dismissal in the circuit court. She alleged that her conduct was remediable and the Board's decision was arbitrary. She argued that she received a disparate discipline for teaching with an expired certificate even though "hundreds" of other teachers were also teaching with expired certificates, some for several years, but who received a lesser discipline.

¶ 19    On April 29, 2013, the circuit court reversed the Board's decision to terminate Moore on the ground that it was clearly erroneous. The circuit court found that "whether a teacher's certificate was expired for a month, a day, a year, a millennium, it doesn't matter. If our concern is we don't want uncertified teachers teaching our kids and that's negligent then it would all be negligent and there is no dispensation." The circuit court concluded that it is arbitrary for one teacher to be dismissed solely on the basis of having a lapsed certificate for seven or eight years while another teacher is not dismissed for having a lapsed certificate for six years. Although the circuit court ordered that Moore be reinstated, the court did not

determine the amount of damages owed to her, if any. The Board filed a motion to reconsider arguing the circuit court failed to determine Moore's damages. On August 19, 2013, the circuit court denied the Board's motion to reconsider and entered a final order reversing the order of termination.

¶ 20   It is from this order that the Board now appeals.

¶ 21                              ANALYSIS

¶ 22   Before we address the merits of the Board's arguments, we must discuss the appropriate standard of review. In administrative review cases, our role is to review the administrative agency's final decision and not the decision of the circuit court. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272 (2009).

¶ 23   Our standard of review depends on whether the issue presented is a question of fact, question of law, or a mixed question of law and fact. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). We review an agency's conclusions of law *de novo*, its factual findings to ascertain whether they are against the manifest weight of the evidence, and its decisions on mixed questions of law and fact for clear error. *Id*. at 209-11; *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 465 (2009); *Swoope v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 323 Ill. App. 3d 526, 529 (2001). While an administrative agency is given broad discretion to determine what constitutes cause for dismissal, the discipline levied cannot be "unreasonable and arbitrary." *Keen v. Police Board*, 73 Ill. App. 3d 65, 74 (1979); *Ellison v. Illinois Racing Board*, 377 Ill. App. 3d 433, 440-41 (2007) (if an administrative board's decision is unreasonable, "arbitrary or capricious" it may be reversed).

¶ 24   The Board argues that the issues presented here are issues of fact and therefore should be reviewed under the manifest weight standard. We disagree and find that this appeal presents mixed questions of law and fact. Mixed questions of law and fact involve "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." (Internal quotation marks omitted.) *Cerone v. State of Illinois*, 2012 IL App (1st) 110214, ¶ 12. In such circumstances, we review an agency's decision under the clearly erroneous standard of review. *Swoope*, 323 Ill. App. 3d at 529. Under this standard, the agency's conclusions will not be reversed unless, after review of the entire record, we are left with "the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001).

¶ 25   The Board first argues that Moore was properly discharged based on her failure to maintain her teaching certificate. The Board argues that its finding that Moore's conduct was irremediable *per se* was proper because her failure to keep her teaching certificate current was due to negligence or gross negligence on her part. Moore responds arguing that the Board's decision was arbitrary because other teachers allowed their certificates to lapse and the Board did not terminate their employment.

¶ 26   Moore was charged with failing to maintain her teaching certificate in violation of CPS and Board rules and the School Code. The School Code provides that an individual is not permitted to "teach or supervise in the public schools *** who does not hold a certificate of qualification granted by the State Board of Education or by the State Teacher Certificate Board and a

regional superintendent of schools as hereinafter provided, or by the board of education of a city having a population exceeding 500,000." 105 ILCS 5/21-1 (West 2010). The parties do not dispute that Moore was initially certified to teach in March 2000 and was required to renew her initial teaching certificate in 2004, yet she failed to take any steps to renew her certificate until June 2010 after she was informed of her lapsed status. Also, there is no dispute that Moore was one of "hundreds" of other CPS teachers in the same position and that the Board sought to terminated Moore's employment because of the lapsed certificate but did not seek the termination of others who more promptly reinstated their teaching certificates.

¶ 27    The School Code also provides that teaching certificates are issued for an express period of time and require renewal before the expiration of the stated time. 105 ILCS 5/21-14(a) (West 2010).[2] After completing four years of teaching on an initial certificate, a teacher is required to obtain a standard teaching certificate. A standard certificate can be obtained by completing either four semester hours of coursework or by receiving mentoring through an approved program. 105 ILCS 5/21-2 (West 2010). If not renewed before expiration, the certificate may reissue upon compliance with section 21-14(a) of the Code (105 ILCS 5/21-14(a) (West 2010)), which provides, *inter alia*, that a teaching certificate not renewed or registered for a period of five years after expiration may be reinstated for a one-year period upon payment of accumulated registration fees. 105 ILCS 5/21-14(a) (West 2010). A teacher could renew such a reinstated certificate after (1) earning five semester hours of course credit or (2) presenting evidence of holding a valid certificate of another type. 105 ILCS 5/21-14(a) (West 2010).

¶ 28    "Statutory provisions should be read in concert and harmonized." *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25. We find that sections 21-1 and 21-14(a) of the School Code exist in harmony. Section 21-1 provides that an individual who "does not hold" a teaching certificate issued by ISBE cannot teach in public schools while section 21-14(a) provides mechanisms for teachers to renew their lapsed certificates. 105 ILCS 5/21-1, 21-14 (West 2010). Reading the two statutes together there is no conflict: an individual must be certified by ISBE to teach in a public school and if a teacher's certificate lapses the legislature has provided a relatively minimal mechanism for the teacher to bring the certificate current: filing an application for renewal and payment of a nominal fee. The purported conflict in this case was created by the Board in its strained application of these two sections, which, if left uncorrected, renders meaningless the renewal procedures and mechanisms of section 21-14(a) enacted by the legislature and employed by the ISBE to bring lapsed teaching certificates current.

¶ 29    By enacting section 21-14(a) of the Code, the legislature has clearly contemplated instances such as the one presented here and has provided a common sense remedy to allow teachers to renew a teaching certificate that has lapsed. This remedial section is clearly intended to allow teachers to maintain their teaching eligibility despite allowing their certificate to lapse. Notably, this specific remedial provision does not define a time period where a lapsed teaching certificate cannot be renewed or becomes "irremediable." The statute merely references certificates "not renewed or registered [for a period of five years after expiration]" and in those situations only the payment of accumulated fees is required to reinstate the certificate. 105 ILCS 5/21-14(a) (West 2010). The testimony of the Board's witnesses confirms that lapsed certificates are not unusual because hundreds of employees

---

[2]The version of section 21-14(a) referenced herein was effective from June 28, 2010, to August 25, 2011. 105 ILCS 5/21-14(a) (West 2010).

allowed their certificates to lapse, some for as many as four, five or six years and that those teachers that reinstated their certificates prior to a hearing were not discharged.

¶ 30    Applying section 21-14(a) to the facts of this case, we agree with Moore that the Board's decision to discharge her was arbitrary and therefore clearly erroneous. Illinois law allows for remediation of a lapsed teaching certificate. The ISBE would not have allowed Moore to renew her certificate if she did not comply fully with Illinois law in renewing her teaching certificate. The Board allowed Moore to continue teaching knowing her teaching certificate had not been renewed. The Board allowed hundreds of other similarly situated teachers with expired certificates to continue teaching while they renewed their certificates and did not seek their removal either before or after their certificates were renewed. We reject the Board's order that effectively singled out Moore for termination because she took longer than others to renew her certificate. Like the other teachers, her certificate was renewed at the time of her hearing and, like the other teachers in a comparable position, an order of discharge is not justified. As stated, section 21-14(a) does not provide a time for which a lapsed certificate is no longer remedial.

¶ 31    Because the legislature has recognized that teachers will allow their certificates to lapse, the Code provides a mechanism for the reinstatement of a lapsed teaching certificate that does not contemplate the finding by the ISBE that the expiration was due to any error, mistake or act of negligence on the part of the affected teacher. The Board was aware of this statutory remedial mechanism and it allowed similarly situated teachers to continue employment upon successful reinstatement. Termination of Moore's tenured employment, even though she successfully reinstated her teaching certificate, albeit not as quickly as her colleagues, was an arbitrary decision that requires reversal. We cannot say that a mistake has not been made here.

¶ 32    In so finding we note that acceptance of the Board's finding that Moore's failure to promptly bring her certificate current is negligent and irremediable *per se* pursuant to section 34-85 ("[n]o written warning shall be required for conduct on the part of a teacher or principal that is cruel, immoral, negligent, or criminal or which in any way causes psychological or physical harm or injury to a student as that conduct is deemed to be irremediable" (105 ILCS 5/34-85 (West 2010))) renders section 21-14(a) a nullity. To justify Moore's discharge, the Board characterized her untimely reinstatement as negligent and irremediable *per se* which cannot stand, especially where section 21-14(a) gives the ISBE the authority to reinstate a lapsed certificate regardless of the duration of the lapse or the reason for the expiration in the first instance.

¶ 33    We must view the statute as a whole and not consider either section 21-14 or section 34-85 in isolation. *1940 LLC v. County of McHenry*, 2012 IL App (2d) 110753, ¶ 6. Furthermore, we "construe a statute as a whole so that no part is rendered meaningless of superfluous." *Id.* The only legislative restriction imposed on the ISBE's authority to reissue or reinstate a lapsed certificate is the requirement that the teacher complete required educational coursework and pay a fee. If the legislature intended teachers, who were negligent in allowing their certificate to lapse or were negligent in the timely renewal of their certificate, to be ineligible to teach the legislature would have so provided. To the contrary, the legislature enacted a specific provision, section 21-14(a) of the School Code, to remedy the fact of a lapsed certificate and provide a remedial mechanism for reinstatement. In short, the remedial provision in section 21-14(a) of the Code cannot be overcome by a negligence finding pursuant to section 34-85 of the Code.

¶ 34     Next, the Board argues that we should affirm its decision to dismiss Moore because her representations to Miller, that she had a waiver from ISBE and that the matter was "resolved" were immoral and possibly criminal. In response, Moore argues that the Board failed to raise this argument at any prior proceeding, and, therefore, the Board has waived our consideration of this issue.

¶ 35     Upon review of the record, we find that the Board raised this argument for the first time on appeal. It is well established that issues raised for the first time on appeal and not previously raised in the trial court are waived or forfeited. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996); *Mann v. Thomas Place, L.P.*, 2012 IL App (1st) 110625, ¶ 15. Therefore, we will not consider this argument due to the Board's failure to raise this matter in prior proceedings.

¶ 36     Lastly, the Board argues that the trial court failed to determine the amount of damages owed to Moore, pursuant to section 34-85 of the Code (105 ILCS 5/34-85 (West 2010)). Moore argues that the Board has waived this issue, but, in the alternative, concedes that if we reverse the Board's decision to dismiss Moore, we should remand this matter to the trial court for a final determination of damages. The record sufficiently shows that the Board did raise this issue in the trial court, and, as a result, we find the Board did not waive this issue.

¶ 37     According to the version of the Code in effect at the time the dismissal charges were instituted against Moore,[3] when reversing a school board's decision to remove a teacher for cause, the trial court was required to "order reinstatement and shall determine the amount for which the board is liable including but not limited to loss of income and costs incurred therein." (Internal quotation marks omitted.) *Russell v. Board of Education of the City of Chicago*, 379 Ill. App. 3d 38, 50 (2007). In this case, the trial court did not assess damages owed to Moore. Therefore, upon remand, we direct the trial court to determine the amount of damages owed to petitioner. 105 ILCS 5/34-85 (West 2010).

¶ 38                                    CONCLUSION

¶ 39     For the foregoing reasons, we affirm the order of the circuit court that reversed the Board's decision to terminate petitioner's employment and remand for a final determination of petitioner's damages.

¶ 40     Affirmed and remanded with directions.

---

[3]Effective June 13, 2011, section 34-85 of the School Code provides that judicial review of a school board's decision to dismiss a teacher is no longer initiated at the circuit court, but must be initiated at this court. 105 ILCS 5/34-85 (West 2012). Accordingly, under the current version of the School Code if a school board's decision to terminate a teacher is reversed, then the matter is remanded to the school board for a determination of back pay and damages. Because Moore's dismissal charges were instituted prior to the effective date of the current School Code, judicial review of her dismissal had to be carried out in accordance with the prior version of the School Code effective August 28, 2007. 105 ILCS 5/34-85(b) (West 2012).